**Bennie COLLINS, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT,
Respondent.**

**No. 94–3481.**

United States Court of Appeals,
Federal Circuit.

Jan. 24, 1995.

Bennie Collins, submitted pro se.

Richard E. Rice, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, submitted for respondent. With him on the brief were Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director and Jeanne E. Davidson, Asst. Director. Also on the brief were Lorraine Lewis, Gen. Counsel and Jill Gerstenfeld, Atty., Office of Gen. Counsel, Office of Personnel Management.

Before NEWMAN, LOURIE and CLEVENGER, Circuit Judges.

Opinion for the court filed by Circuit Judge CLEVENGER. Dissenting opinion filed by Circuit Judge PAULINE NEWMAN.

CLEVENGER, Circuit Judge.

Bennie Collins petitions for review of the March 11, 1994, initial decision of the Administrative Judge affirming the reconsideration decision of the Office of Personnel Management (OPM) denying Collins' request to make an untimely deposit in order to receive credit under the Civil Service Retirement System (CSRS) for his active post–1956 military service. On June 9, 1994, the Merit Systems Protection Board (Board) denied Collins' petition for review for failure to meet the Board's criteria for review. *Collins v. Office of Personnel Management,* 63 MSPR 69 (1994). The initial decision thus became the final appealable decision of the Board. We affirm.

I

A civil service annuitant such as Collins who retires after September 7, 1982, is entitled to credit for active duty military service performed after 1956 under both the CSRS and the Social Security System, but only if

the annuitant deposits with the Civil Service Retirement Fund an amount equal to seven percent of the person's total post–1956 military pay. 5 U.S.C. §§ 8332(j), 8334(j) (1988 & Supp. V 1993). If an annuitant fails to make the requisite deposit, OPM is obligated to recompute the person's annuity payment when the person first becomes eligible for Social Security benefits. The recomputation excludes credit for the post–1956 military service for which no deposit had been made to earn entitlement to credit. 5 U.S.C. § 8332(j)(1).

■ OPM has promulgated regulations which provide that an eligible employee must file an application for deposit with, and make payment to, the appropriate office in the employing agency. 5 C.F.R. §§ 831.2104–831.2107 (1988). A former employee may also file an application for deposit, but must make the required deposit to OPM "prior to final adjudication of the application for retirement of survivor benefits." 5 C.F.R. §§ 831.2104(b), 831.2107(b)(1) (1988). An applicant is required to make the deposit before the date of retirement or before the date OPM takes final action on the retirement application. *Holtermann v. Office of Personnel Management,* 57 M.S.P.R. 380, 384–85 (1993).

Because eligibility for Social Security benefits occurs at age 62,

> "Catch–62" is the term used to describe a situation where an individual with military service retiring under the civil service retirement system uses the years of post–1956 military service for the civilian pension. These military years are also automatically creditable for social security benefit purposes. In order to prevent coverage under both systems for the same period of service, the civil service retirement annuity, by law, is recomputed at age 62 (when social security eligibility begins) to eliminate the period of military service from the civil service annuity. The additional social security benefit gained for these years of military service often does not match the reduction in the civil service annuity.

S.Rep. No. 97–504, 97th Cong., 2d Sess. 231 (1982), *reprinted in* 1982 U.S.C.C.A.N. 1641,

1809–10. In order to enjoy coverage under both systems for the same period of service, an annuitant is required to make the specified deposit. Notwithstanding the somewhat catchy label used to describe the results of a statutory entitlement, the fact remains that a statute and unchallenged regulations specify with no room for doubt that a civil service annuitant cannot enjoy the full benefit of the post–1956 military service without timely paying a price.

## II

Collins retired from the military after 20 years of service. Thereafter, Collins was a civilian employee of the government until he retired from his food service foreman's job at the Veterans Administration Medical Center in Lexington, Kentucky on December 31, 1988, at the age of 57. In the course of perfecting his civilian retirement, Collins on October 31, 1988 signed OPM Form 1515, a document entitled "MILITARY SERVICE DEPOSIT ELECTION." The form states in its first textual paragraph:

> Our records indicate that you (or the deceased employee named above) had military service after 1956 and are eligible for a civil service annuity. If you are eligible for a Social Security benefit which includes credit for this military service (or will be eligible at age 62) you must either make a deposit for the military service to the Civil Service Retirement System or your civil service benefits will be reduced at age 62 unless you are eligible for a guaranteed minimum annuity.

The form continues to state:

> *Instructions to employee (or survivor):* Your decision about making this deposit may affect your rights under the Civil Service Retirement System:
>
> > 1. Please read the attached "Information for employee or survivor" carefully to be sure you understand the consequences of not making the deposit for military service.

The attached information states that persons who qualify for Social Security old age or survivor benefits

have the option of either: (1) making the deposit and thereby avoiding a reduction in annuity at age 62 (or 60 for survivors), when the military service is credited for Social Security purposes, or (2) not making the deposit and having the annuity adjusted at age 62 (or 60 for survivors).

The information specifies that the amount of the deposit for post–1956 military service is seven percent of military basic pay. OPM Form 1515 and its attached information do not include annuitant specific calculations, such as the number of dollars equalling seven percent of the military pay or the number of dollars by which the annuitant's civil service benefits will be reduced at the time of eligibility for Social Security benefits if the annuitant fails timely to make the required deposit. The form and its information, however, give unmistakable notice that a person's annuity will be reduced at age 62 if no deposit has previously been made to earn entitlement to the benefit of post–1956 military service.

At the bottom of Form 1515, just above his signature, Collins executed his election:

### EMPLOYEE (OR SURVIVOR) ELECTION

I have read this information concerning my rights to make deposit for post–1956 military service. (Mark "x" in the appropriate box below to indicate your election.)

Collins put his "x" in the box preceding "I have decided *not* to make (or complete) this deposit."

In due course, the Social Security Administration notified OPM that Collins was eligible for Social Security benefits based on his post–1956 military service. Because Collins had not made the required deposit to retain credit for his military service, OPM recomputed Collins' annuity. When notified of the reduction in his annuity, Collins sought reconsideration by OPM requesting permission to make the required deposit in order to reverse OPM's recomputation of his annuity. OPM denied Collins' request:

We note you make no specific claim of administrative error under 5 CFR 831.2104(a) and 5 CFR 831.2107(a)(1) with respect to the time limit for making a deposit. . Although you suggest that you were not aware of the need to make a 7 percent deposit for your post–1956 active duty service prior to retirement in order to have it credited in computing your annuity, neither statute [5 USC 8332(j) and 8334(j)(1)], nor regulations [5 CFR Part 831, Subpart U], require pre-separation counseling as to deposit election rights or deadlines. *Holtermann v. OPM*, 57 M.S.P.R. 380 (1993).

Because we have no record of any timely inquiry from you regarding this matter, we find that you did not exercise due diligence in pursuing the deposit option when it was still available. Therefore, you are not eligible to make a deposit at this time....

Collins timely appealed to the Board from OPM's November 16, 1993 reconsideration decision.

### III

The Board noted that during the telephonic hearing Collins testified that he was unaware when he retired of the need to make the deposit before he retired or before OPM finally adjudicated his application for retirement. Collins did not claim that he had been misinformed by any agency personnel, and candidly admitted that "he himself was to blame for his failure to make a timely deposit." In response to Collins' statement that he was unaware, the Board found

his testimony lacking in credibility because it is inconsistent with his conduct in signing OPM Form 1515, Military Service Deposit Election, opting not to make a deposit. This form, as signed by [Collins], acknowledges receipt by him of written information regarding the consequences of failing to make a timely deposit. Nonetheless, [Collins] freely elected not to make a deposit.

Finding no ground on which to excuse Collins from the consequences of his free election, the Board affirmed OPM's reconsideration decision.

### IV

Collins argues on appeal that he made a mistake in signing a form "that I didn't

understand the consequences of" in terms of the amount of dollars that were at stake. According to Collins, OPM has reduced his annuity from $1390 to $845 per month, and his Social Security benefit of $268 per month does not cover the $545 monthly reduction in his annuity. Collins states that he is "willing to pay the 7% of my post 1956 military [pay] plus interest to make up for the mistake of signing form 1515."

The government, in response, points us to the statutes and regulations that create Catch 62 and specify that deposits made to ensure full credit for post–1956 military service must be made before retirement or before OPM completes the processing of one's retirement application. No statute or regulation provides for later tender of deposits, even with interest. The government contends that Collins has failed to establish any ground for relief from the regulatory time requirement for making a deposit. Finally, the government reminds us that the Board found incredible Collins' argument that he did not understand the ramifications of the form he freely signed.

## V

■ Although Collins characterizes the Catch 62 law and regulations as unfair to one who has served his country on the battlefield and in peace, he does not otherwise suggest that the law and regulations are invalid or unenforceable. Nor does Collins contend that he satisfies any of the grounds upon which the Board has found authority to relieve an applicant from the burdens of a regulatory restriction. In *Speker v. Office of Personnel Management*, 45 M.S.P.R. 380 (1990), *aff'd*, 928 F.2d 410 (Fed.Cir.1991) (Table), the Board enumerated three grounds for waiver of a regulatory deadline requirement: if (1) the regulation itself specifies circumstances for waiver, (2) affirmative misconduct by the agency warrants equitable estoppel of the regulatory provision, or (3) an agency fails to provide notice of election rights and corresponding deadlines, if such notice is required by statute or regulation. *Id.* at 395.

With regard to the instant case, the pertinent regulations do not provide any opportunity for waiver of the deposit-making deadline dates. Collins makes no claim that agency misconduct caused his "mistaken" election, and the pertinent statutes and regulations do not require that notice be given to the annuitant. *See Davis v. Office of Personnel Management*, 918 F.2d 944, 946–47 (Fed. Cir.1990).

Collins in essence asks this court to add a fourth ground for relief from failure to meet statutory and regulatory requirements, namely, unilateral mistake in signing an unambiguous election form that notifies the signer of the consequences of election. The Board has previously rejected unilateral mistake as a ground for voiding freely made elections concerning survivor annuities. *See Carlton v. Office of Personnel Management*, 52 M.S.P.R. 225, 229 (1992) (mistaken election of full survivor annuity not voidable when agency acted properly).

■ We can think of no reason why the same view should not prevail in the setting of elections to deposit or not to deposit sums necessary to implement Catch 62. Indeed, that view is in harmony with and promotes the settled proposition that one is not relieved from the consequences of a written election absent a showing that mental incompetence, duress or fraud is the reason for an election one later seeks to void. *Coleman v. Prudential Bache Sec.*, 802 F.2d 1350, 1352 (11th Cir.1986); *Comprehensive Accounting Corp. v. Rudell*, 760 F.2d 138, 140 (7th Cir. 1985); *Donovan v. Mercer*, 747 F.2d 304, 308 n. 4 (5th Cir.1984); *Fraass Surgical Mfg. Co. v. United States*, 571 F.2d 34, 37–38, 215 Ct.Cl. 820 (1978); *Richardson Camera Co. v. United States*, 467 F.2d 491, 496, 199 Ct.Cl. 657 (1972); *Schoeffel v. United States*, 193 Ct.Cl. 923, 934–35, 1971 WL 3833 (1971); 1 Samuel Williston, *A Treatise on the Law of Contracts*, § 90A (3d ed. 1957); *Restatement (Second) of Contracts* § 23, comments b, e (1981).

■ Finally, we address briefly Collins' suggestion that his election should be voided because he was not specifically informed about the dollar consequences of his election at the time it was made. Collins does not contend that he requested and was denied

any specific information before making his election. Furthermore, his contention fails for want of any statutory or regulatory support for the proposition that the government, in the Catch 62 setting, is required to provide the annuitant with any information concerning the election. That OPM wishes to supply information concerning the election is beneficial, but not required.

The Board's decision is

*AFFIRMED.*

. No costs.

PAULINE NEWMAN, Circuit Judge, dissenting.

Mr. Collins petitions the court to right a wrong, wherein he has been deprived of a significant portion of his military service-based pension. Unlike many of the cases that reach us, this is not a matter of government largesse, or qualification for "entitlement". Mr. Collins' military pension was earned and vested at the time he retired from the military service. By inadequate information at the time of his retirement from the civilian service, and OPM's refusal to authorize discretionary relief, he has been severely prejudiced.

### Informed Consent

Based on the information given him at the time he retired at age 57 from civilian service, Mr. Collins made an election. The Form 1515 did not tell him the consequences of his election. He was told those consequences four years later, when OPM sent him a calculation stating that $545 of his military-based pension of $1,390 would be replaced with Social Security payments of $268. With this information in hand the error of that earlier election was manifest, and Mr. Collins sought to correct it. Mr. Collins' request for correction was denied by OPM on the basis that OPM did not make an "administrative error" in leading Mr. Collins to sign Form 1515; that he willingly signed the Form and thus must bear the consequences, although he was not told what would be the consequences.

Correction is not barred by statute or regulation, and Mr. Collins seeks no more than the pension that he has earned. He asked to make a belated deposit, but he is also willing to accept far less than his statutory entitlement, and to waive his entire civilian pension and right to Social Security. OPM has denied all relief.

Form 1515 is entitled MILITARY SERVICE DEPOSIT ELECTION, and is for use "only for employees who retire with title to an immediate annuity", and who "are eligible for a civil service annuity". Mr. Collins had twenty years of military service and thirteen years of civilian service. By signing the form Mr. Collins declined to make a deposit of 7% of his military pay, the form stating that the consequence was that his civil service benefits "will be reduced at age 62 unless you are eligible for a guaranteed minimum annuity." An "Information" form that was obtained by this court states "Your decision about completing the deposit may affect your rights under the Civil Service Retirement System."

OPM does not dispute that Mr. Collins was not told the financial consequences of his action, but states that "neither the employing agency nor OPM was obligated by statute or regulation to notify Mr. Collins of the consequences of failure to pay the deposit at the time of retirement." However, statute and regulation do not endorse uninformed consent. Mr. Collins states in his brief, without contradiction by the government, that:

> The employing agency led me to believe that it would be to my best interest to retire at the time I retired even after I had signed the form 1515 and other papers giving up my rights to the military retired pay that I had been receiving up until my retirement in 1988.

When OPM told Mr. Collins, four years later, of the consequences of his action, OPM reduced his retirement "to less than it would have been with my regular 20 year retirement from the Army, which I had prior to taking the civil service retirement." The MSPB, while upholding the OPM decision, stated that "OPM [is not] bar[red] from allowing an individual to make a deposit for military service beyond the regulatory deadline," the administrative judge citing *Office of Personnel Management v. Richmond,* 496

U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990).

Mr. Collins states that had he been told that he would suffer a sizable reduction in his pension he would not have applied for credit for his civilian service. The facts and figures affecting Mr. Collins were available to OPM at the touch of a button. When he was required to make a significant choice on retirement, he was entitled to the information necessary to make an informed choice. In *Richmond* the Court held that the government could not be bound by its agents' inadequacies; but *Richmond* did not hold that the government can rely on its agents' inadequacies to avoid meeting governmental obligations.

I stress that there was no communication of the financial consequences, although that information was in OPM's possession. The first time Mr. Collins was told of the financial consequences was when OPM sent him a computation as his 62nd birthday approached: the information that he should have been given four years earlier. It is fundamental that omission of critical information possessed by only one party will defeat any binding arrangement. On the issue of informed consent Mr. Collins said it best: "If any [one] believes that I would sign a form allowing OPM to make me pay the Government for having served an extra 13 years and was aware of the above consequences, please allow me to change my plea to insanity."

*Authorization for Belated Deposit*

No statute or regulation bars providing remedy to Mr. Collins. There is no government interest served by depriving him of his military pension, earned in Korea and Vietnam. This pension was vested, he had title to it, and it was being paid until the events here transpired. Mr. Collins states that he has been told that OPM has the right to waive the regulatory period for making the deposit of 7% of his military pay, and OPM agrees that waiver is within its authority. However, OPM holds that since there was no "affirmative misconduct by the agency, administrative error, or failure to provide no-

tice", waiver is not available to Mr. Collins. Focusing on the aspect of "notice", OPM states that unless statute or regulation required OPM to tell Mr. Collins the financial consequences of his retirement election, there was no obligation to do so. I share Mr. Collins' distress with this inhumane and unnecessary, as well as incorrect, bureaucratic action.[1] Whether a federal employee with twenty years of military and thirteen years of civilian service receives fair and considerate treatment upon retirement is a matter of concern to the nation, both for the quality and well-being of the federal service, and preservation of the nation's principles of dignity and justice.

---

1. Mr. Collins alternatively asks that he be permitted to delay the start of Social Security until age 65, "like everyone else", thus preserving his military pension for three more years. The government does not respond, and apparently did not respond to Mr. Collins.