# United States Court of Appeals for the Federal Circuit

05-3290

MARCUS L. MCCRARY,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Robert S. Morris, Hammerle Finley, of Denton, Texas, for petitioner.

Gregory T. Jaeger, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Donald E. Kinner, Assistant Director.

Appealed from:    United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

05-3290

MARCUS L. MCCRARY,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

_____

DECIDED:  August 16, 2006

_____

Before NEWMAN, LOURIE, and LINN, Circuit Judges.

LINN, Circuit Judge

Marcus L. McCrary ("McCrary") appeals a final decision of the Merit System Protection Board ("Board"), McCrary v. Office of Personnel Management, DA-0831-04-0438-I-1 (M.S.P.B. May 25, 2005) (Final Decision), denying McCrary's petition for review of the Administrative Judge's ("AJ") decision, McCrary v. Office of Personnel Management, DA-0831-04-0438-I-1 (M.S.P.B. Aug. 25, 2004) (Initial Decision), which affirmed the Office of Personnel Management's ("OPM") decision to reduce his annuity benefits by eliminating credit for his post-1956 military service.  Because the Board's decision is both arbitrary and not supported by substantial evidence, we reverse the decision on waiver and remand to the Board with instructions to set a time limit under

5 C.F.R. § 831.2107(a)(1) (2006), before which McCrary may make a deposit of the amount needed to claim credit for his prior military service.

BACKGROUND

On January 22, 2002, after having served on active duty in the United States Navy between 1963 and 1967 and in civilian employment with the Department of Transportation and the Department of the Air Force for nearly 30 years, McCrary retired under the Civil Service Retirement System ("CSRS"). Prior to his retirement, McCrary completed an application for retirement (Standard Form 2801) and a military service deposit election form (OPM Form 1515). On both documents, McCrary elected not to make a deposit to claim credit for his post-1956 military service. McCrary admits that he did not timely make the deposit, but asserts that he did not do so because, when he asked how much the deposit will cost, he was told by a government counselor that it would cost "a lot." See Initial Decision, slip op. at 6.

Upon his retirement in 2002, McCrary began receiving annuity payments each month. On April 4, 2004, McCrary became eligible for Social Security benefits. With Social Security benefits in place, it was necessary for the government to recalculate McCrary's annuity under applicable statutory provisions, which permit credit of both civilian and military service toward an annuity only if the required military deposit was made before retirement.

Thus, on April 20, 2004, OPM notified McCrary that his monthly Civil Service annuity benefit had been recomputed to exclude his military service years and was being reduced by $398 per month because of his election at the time of his retirement not to make the deposit. Id., slip op. at 7. The required deposit would have been seven

percent of his military pay of $8,000, or a lump sum of $560, plus interest.  Id.  Seven days later, surprised at the effect of his election on his retirement annuity, McCrary filed an appeal of OPM's decision with the Board.  In his appeal, McCrary sought waiver of the deposit deadline to permit late payment of the deposit, with interest, and reinstatement of his full annuity.  Before the Board, McCrary argued that he was "grossly misinformed as to the dollar amount" of the deposit, and that, had the amount of deposit and reduction been effectively explained to him, he "would surely have elected to buy back [his] military time."  Id., slip op. at 5-7.  McCrary asserted that OPM failed to provide proper counseling when, in response to McCrary's inquiry regarding how much it would cost to make the required deposit, an OPM employee answered "something like, 'A lot.'"  Id., slip op. at 6 (emphasis in original).  McCrary argued that the deadline should be waived because OPM committed administrative error in characterizing a deposit of $560, plus interest, as "a lot" when the consequence of his election not to make the deposit was a reduction of $398 per month in his annuity.  In support of his argument for waiver of the deadline, McCrary asserted that in Riddick v. Office of Personnel Management, 85 M.S.P.R. 472, 476 (2000), the Board waived the military deposit deadline due to administrative error where the agency "materially misinformed" the appellant as to the amount of the deposit.  OPM contended that McCrary's request to make a deposit should be denied because the Standard Form 2801 and OPM Form 1515 explain the consequences of failing to make a deposit prior to retirement and McCrary indicated, on those documents, his election not to make a deposit. Initial Decision, slip op. at 2-3.

On August 25, 2004, the AJ decided that the deadline for making the deposit should not be waived and affirmed OPM's decision to reduce McCrary's annuity benefits by eliminating credit for his post-1956 military service. Id., slip op. at 1. The AJ acknowledged that, if McCrary could show that he did not make the deposit due to administrative error, "he may be permitted to make a deposit within a time limit set by OPM." Id., slip op. at 3. The AJ further recognized that certain decisions of the Board hold that administrative error "occurs when OPM or the employing agency affirmatively misleads an annuitant regarding his retirement rights." Id., slip op. at 3-4 (citing Zimmerman v. Office of Pers. Mgmt., 80 M.S.P.R. 512, 516 (1999); Riddick, 85 M.S.P.R. at 476; Pinkston v. Office of Pers. Mgmt., 57 M.S.P.R. 347, 350 (1993)). The AJ noted that, in Riddick, "the retirement counselor told the employee that the required deposit 'would probably total thousands of dollars' when it would only have been $355.27 plus interest," but distinguished Riddick on the ground that, in that case, a specific representation regarding the dollar consequences of the deposit was made, whereas, in this case, no specific amount was represented. Initial Decision, slip op. at 8. The AJ did not distinguish Zimmerman or Pinkston, but instead based her decision on this court's decision in Collins v. Office of Personnel Management, 45 F.3d 1569, 1573-74 (Fed. Cir. 1995), which held that, where an annuitant receives full and fair notice of the requirement to make a deposit, the government is not required to inform an annuitant about the dollar consequences of electing not to make the deposit. The AJ concluded that, because McCrary "was properly advised and understood that he must pay a deposit for this post-1956 military service and of the consequences for failing to make such a deposit," and because, under Collins, the government was not required to

inform McCrary of the precise dollar consequences of not making the deposit, the deadline should not be waived. Id., slip op. at 8.

On May 25, 2005, the Board denied McCrary's petition for review, making the Initial Decision the final decision of the Board. Final Decision, slip op. at 1-2. McCrary timely filed an appeal with this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

DISCUSSION

1. Standard of Review

Our review of this appeal is limited in scope. We must affirm the decision of the Board unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. See 5 U.S.C. § 7703(c) (2000); Cheeseman v. Office of Pers. Mgmt., 791 F.2d 138, 140 (Fed. Cir. 1986). The petitioner bears the burden of establishing error in the Board's decision. See Cheeseman, 791 F.2d at 140.

2. Statutory and Regulatory Background

A civil service annuitant who retires after September 7, 1982 is entitled to receive credit for active duty military service performed after 1956 under both the CSRS and the Social Security System, but only if the annuitant deposits with the Civil Service Retirement Fund an amount equal to seven percent of the person's total post-1956 military pay. See 5 U.S.C. § 8334(j) (2000). Moreover, the amount of the deposit accrues interest until deposited. See id.. § 8334(e), (j). If, before retirement, the individual does not make the required deposit with interest, OPM must recompute the

individual's retirement annuity when the individual becomes eligible for Social Security benefits, so as to exclude any post-1956 military service from the computation of the civil service retirement annuity benefit.

OPM has promulgated regulations regarding the deposit requirement. See 5 C.F.R. §§ 831.2101-.2107 (2006). Those regulations provide that, while an individual generally must make a deposit prior to retirement from a position subject to coverage under the CSRS, the time limit requiring that the deposit be made before retirement may be waived if the failure to make the deposit prior to retirement from service was the result of an administrative error. See id. § 831.2107(a)(1). If a separated employee, through administrative error, did not make or complete the deposit prior to his retirement, the deadline may be waived and the deposit, with interest, may be paid in a lump sum within a time set by OPM. Id. The regulations do not define "administrative error."

### 3. Analysis

This appeal presents the question whether OPM committed administrative error when, in response to McCrary's inquiry as to the amount of the deposit, OPM answered that the required deposit is "a lot" when, in fact, the amount of the required deposit was $560, plus interest. For the reasons below, we find that the retirement counselor's statement that the required deposit would cost "a lot" constitutes administrative error such that the deadline for making the deposit should be waived.

As discussed above, the Board held that the deadline should not be waived because the government was not required to inform McCrary of the precise dollar consequences of not making the deposit, citing Collins, 45 F.3d at 1573-74. In Collins,

the annuitant, Bennie Collins, claimed that he made a "mistake" in electing not to make the required deposit because "he was not specifically informed about the dollar consequences of his election at the time it was made." Id. at 1573. This court held that Collins was not entitled to a waiver of the time limit within which to make a deposit because Collins freely made a written election not to make the deposit. Id. at 1573-74. We further concluded that, under the facts of the case, the government was not required to inform an individual of the dollar consequences of failing to make the required deposit. Id. In that case, however, "Collins [did] not contend that he requested and was denied any specific information before making his election" not to make the required deposit. Id. Nor did he make a specific claim of administrative error. Id. at 1572.

Unlike Collins, the issue before us in this case requires us to examine the government's obligations when responding to a direct inquiry regarding the retirement deposit. While our case law is silent as to this issue, the Board has long held that it is administrative error for the government to mislead or misinform an employee who inquires about military deposit requirements. See Gilliam v. Office of Pers. Mgmt., 91 M.S.P.R. 352, 355 (2002) (finding administrative error where annuitant was informed that, when he reached age 62, his annuity without making the deposit "would stay close to the amount" of what he had been receiving before age 62, when, in fact, the failure to make the deposit resulted in a loss of $372 per month); Sutcliff v. Office of Pers. Mgmt., 86 M.S.P.R. 101, 106 (2000) (finding administrative error where the employing agency stated that the reduction in annuity was something like "not much," when in fact it was $134, especially because the amount of his deposit "would have been minimal compared to the return the appellant might expect over the life of the annuity"); Riddick,

85 M.S.P.R. at 476 (finding administrative error where annuitant was informed that the deposit "would probably total thousands of dollars" when it would only have been $355.27, plus interest); Zimmerman, 80 M.S.P.R. at 514 (finding that the employing agency materially misinformed employee regarding the amount of his annuity reduction by stating that the reduction "would be no more than a one for one dollar reduction in [his annuity]" when in fact it was almost a two for one reduction); Owens v. Office of Pers. Mgmt., 76 M.S.P.R. 543, 550-51 (1997), abrogated in part on other grounds by King v. Office of Pers. Mgmt., 97 M.S.P.R. 307, 317 (2004) (finding administrative error where annuitant was advised that his reduction would be $100 per month when in fact it was $290 per month and agency acknowledged that it "may have misled" annuitant); Fleak v. Office of Pers. Mgmt., 57 M.S.P.R. 338, 340 (1993) (finding administrative error where employee did not make the required deposit because he relied on an estimated statement of benefits that misinformed him that he did not have sufficient credits to qualify for social security); Pinkston, 57 M.S.P.R. at 350 (finding administrative error where employee did not make the required deposit because agency erroneously stated that if he elected to receive payment of his retirement contributions in a lump sum retirement, he would not have to make a deposit when, in fact, he was required to make the deposit); see also Coffey v. Office of Pers. Mgmt., 79 M.S.P.R. 429, 433 (1998) (finding that it was "highly plausible" that the employee would have made the deposit, if he had been aware of the need to do so, where he had 11 years and 6 months of military service, and elimination of that credit for that service would have reduced his annuity by approximately $800 per month).

05-3290                                    8

The consistent holdings of this long line of Board decisions make clear that the government commits administrative error if it misrepresents the deposit requirement or gives a misleading answer to a question about the deposit requirement. In some of these cases, exemplified by Riddick and Owens, the government responded to an employee's inquiry by making a specific statement regarding the dollar consequences of the deposit requirement. In others, exemplified by Gilliam and Sutcliff, the government responded to an inquiry by making a generalized statement as to the effect of not making the required deposit. The common position of the Board in all of these cases is that the government commits administrative error by answering employees' inquiries about annuities with misleading responses, whether they be specific (as in Riddick and Owens) or general (as in Gilliam and Sutcliff). Thus, the longstanding policy articulated by the Board is that military veterans are entitled to expect that the government will provide them with accurate answers to questions concerning the deposit requirements to enable them to make informed decisions on matters that may significantly affect their annuities.

Consistent with the Board cases cited herein, we hold that when an employee, at the time of an election, asks for information regarding the amount of the military deposit or the consequences of failing to make the deposit, the government commits administrative error under 5 C.F.R. § 831.2107(a)(1) if its response either misrepresents the dollar amounts in question or is so indirect, inaccurate, or incomplete as to confuse or mislead the employee as to the amount of the deposit or the effect of any failure to make the deposit on the annuity recalculation. The government will best avoid administrative error by giving the individual a direct answer and providing the exact

amount needed for the deposit as well as at least a reasonably accurate estimate of the annuity adjustment likely to result from a decision not to make a deposit. These numbers should be readily available to the government and normally will impose no unreasonable burden upon it.

Here, the Administrative Judge found that McCrary "asserted in a sworn, unrebutted statement that he was affirmatively misled when his retirement counselor told him it would cost him 'a lot' to make the deposit for his military service." Initial Decision, slip op. at 7. The Board also found that the advice McCrary received was material to his decision to retire without making the required deposit. Id. slip op. at 5 (finding that McCrary stated that if the deposit information "had been effectively provided to me, I would surely have elected to buy back my military time"). The Board opines that because McCrary "has not defined what he or the counselor considered to be 'a lot' at the time of his retirement in January 2002," "[i]t is conceivable that $560.00, plus interest, could have been 'a lot' to both the counselor and [McCrary] in 2002." Id. at 7-8. However, it is equally conceivable that $560, plus interest, would not be considered "a lot," particularly because the amount of his deposit "would have been minimal compared to the return the appellant might expect over the life of the annuity." Sutcliff, 86 M.S.P.R. at 106. The government chose to respond indirectly to McCrary's request for the cost of the deposit with only the relative expression "a lot." This indirect response left the question of the dollar consequences of the deposit decision faced by McCrary unsettled. Moreover, it left the implication that the deposit amount was not worth paying. The Board's holding of no administrative error is not supported by substantial evidence. The government's response was both indirect and incomplete as

to the amount of the deposit, and there is no basis to conclude that the government's response was anything other than misleading. A payment of $560, plus interest, is not "a lot" to pay for McCrary to avoid a reduction to $398 per month in the annuity to which he is entitled. It was administrative error for the government to respond the way it did to McCrary's inquiry about the dollar consequences of the deposit requirement.

Moreover, when the Board takes a position inconsistent with its longstanding practice, without any explanation for the shift, the Board's action "is not reasoned decision-making and is arbitrary." Schucker v. Fed. Deposit Ins. Corp., 401 F.3d 1347, 1356 (Fed. Cir. 2005) (holding that the Board acted arbitrarily where it acted contrary to longstanding precedent and gave no reason for deviating from that precedent) (citing M.M. & P. Mar. Advancement, Training, Educ. & Safety Program (MATES) v. Dep't of Commerce, 729 F.2d 748, 754-55 (Fed. Cir. 1984) (holding that the agency acted arbitrarily in acting contrary to its precedent and without explanation)). In McCrary's case, although the Board attempted to distinguish Riddick, it made no attempt to distinguish the other two cases it cited, namely Zimmerman and Pinkston, and failed to discuss the other Board decisions cited supra. Moreover, the Board's distinction of Riddick—drawing a dividing line between an agency's specific versus generalized statement regarding the dollar consequences of the deposit requirement—overlooks Gilliam and Sutcliff. For these reasons, the Board's decision is arbitrary.

We also disagree with the Board's suggestion that McCrary's failure to ask for clarification of the term "a lot" should foreclose his ability to seek waiver of the deadline. Initial Decision, slip op. at 7-8. While McCrary could have, and perhaps in hindsight should have, asked a follow-up question of what was meant by "a lot," his failure to

follow up does not excuse the government's misleading response in the first instance and does not forfeit McCrary's right to seek a waiver of the deadline for making the deposit needed to avoid recalculation of his annuity. McCrary seeks only to make late payment of the deposit so that he can receive the benefit earned by his prior military service. Permitting McCrary to make a late deposit exposes the government to no more expense than if the deposit had been timely made. Under these circumstances, lack of follow-up seeking clarification of the ambiguous term "a lot" does not excuse the government's misleading response and should not prevent his seeking a waiver of the deadline for making the deposit needed to avoid recalculation and consequent reduction of his annuity.

## CONCLUSION

Because the decision of the Board denying McCrary's request for waiver of the deposit requirement deadline was arbitrary and not supported by substantial evidence, we reverse and remand to the Board with instructions to set a time limit under 5 C.F.R. § 831.2107(a)(1) (2006), before which McCrary may make the military deposit.

## REVERSED AND REMANDED.

## COSTS

Costs are awarded to McCrary.