# United States Court of Appeals for the Federal Circuit

2008-3174

ELPIDIA L. BRAZA,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Denise W. DeFranco, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Cambridge, Massachusetts, argued for petitioner. With her on the brief were Mary K. Ferguson and Nikolas J. Uhlir.

Hillary A. Stern, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. On the brief were Jeanne E. Davidson, Director, Kirk T. Manhardt, Assistant Director, and Carrie A. Dunsmore, Trial Attorney.

Appealed from: Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2008-3174

ELPIDIA L. BRAZA,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Petition for review of the Merit Systems Protection Board in DC0831070165-I-1.

_____

DECIDED: March 16, 2010

_____

Before MICHEL, Chief Judge, NEWMAN, MAYER, LOURIE, RADER, BRYSON, GAJARSA, LINN, DYK, PROST, and MOORE, Circuit Judges.

Opinion for the court filed by Circuit Judge PROST, in which Chief Judge MICHEL and Circuit Judges MAYER, LOURIE, RADER, BRYSON, GAJARSA, LINN, and MOORE join. Dissenting opinion filed by Circuit Judge DYK, in which Circuit Judge NEWMAN joins.

PROST, Circuit Judge.

Elpidia L. Braza is the widow of a former government employee who retired under the Civil Service Retirement System ("CSRS"). In connection with his retirement, Mr. Braza completed and signed a standard retirement application form. On his form, Mr. Braza indicated that he elected to receive an annuity payable only during his lifetime, and did not wish to reduce his annuity to provide a survivor annuity for his spouse. Such an election can only be made with the consent of the retiree's spouse.

Shortly before his retirement took effect, Mrs. Braza completed and signed the standard spousal consent form, consenting to her husband's survivor annuity election.

Following her husband's death, Mrs. Braza filed a claim for a survivor annuity as the spouse of a deceased civil service employee. The Office of Personnel Management ("OPM") denied Mrs. Braza's claim, finding that she waived her entitlement to such annuity by completing and signing the standard form. Mrs. Braza petitioned for review before the Merit Systems Protection Board ("MSPB" or "Board"), arguing that the form bearing her signature did not validly waive her right to an annuity. The Board affirmed OPM's decision.

Mrs. Braza appealed to this court, and argument was heard before a panel of three judges on December 4, 2008. Finding the matter of how to evaluate the validity of annuity waivers under the CSRS to be of exceptional importance, the court decided sua sponte to resolve the matter en banc. For the reasons explained below, the en banc court concludes that Mrs. Braza waived her right to the spousal annuity by completing and signing the written waiver form. Such written waiver is valid absent fraud, duress, or mental incompetence, none of which are present here. We therefore affirm the decision of the MSPB.

BACKGROUND

The Spouse Equity Act of 1984, Pub. L. No. 98-615, 98 Stat. 3195, was enacted to provide spouses of retired civil service employees with a default entitlement to a survivor annuity, and to ensure that spouses receive notice of, and consent to, a retiring employee's election not to provide for a survivor annuity. The 1984 Act reads, in relevant part:

> [I]f an employee . . . dies after having retired under this subchapter and is survived by a widow or widower, the widow or widower is entitled to an annuity equal to 55 percent [of the employee's annuity] . . . unless the right to a survivor annuity was waived under such section 8339(j)(1) . . . .

Id. § 2(4) (codified at 5 U.S.C. § 8341(b)). Section 8339(j)(1) provides that the retirement annuity of an employee who is married at the time he retires will be automatically reduced during his lifetime to take into account the cost of providing a survivor annuity for the spouse "unless the employee . . . and the spouse jointly waive the spouse's right to a survivor annuity in a written election filed with [OPM] at the time that the employee . . . retires." 5 U.S.C. § 8339(j)(1).

To provide for the "written election filed with [OPM]" jointly waiving the spouse's annuity, OPM has issued a set of standard forms for employees and their spouses to complete and submit in connection with their annuity election. Mr. and Mrs. Braza completed and signed the version of these forms in effect at the time of his retirement, denominated "Revised January 1990."

One such form is Standard Form (SF) 2801, entitled "Application for Immediate Retirement." The section of the form providing for an annuity election states: "If you are married at retirement, the law provides an annuity with full survivor benefits for your spouse unless your spouse consents to your election not to provide maximum survivor benefits." The form provides check boxes next to options for a full annuity, a reduced annuity, and no annuity. Mr. Braza initialed the option providing, "I CHOOSE AN ANNUITY PAYABLE ONLY DURING MY LIFETIME." Next to the option elected by Mr. Braza are instructions to attach an SF 2801-2 showing spousal consent to the election. The form further explains: "If you are married at retirement, you cannot choose this type

of annuity without your spouse's consent. No survivor annuity will be paid to your spouse after your death if he or she consents to this election."

The next form is SF 2801-2, entitled "Spouse's Consent to Survivor Election." The top part of the form is completed by the retiring employee. Mr. Braza filled in his name and selected the third of three options presented, which reads: "No regular or insurable interest survivor annuity for my current spouse." Mrs. Braza then signed the middle part of the form, to be completed by the spouse, beneath the statement: "I freely consent to the survivor annuity election described in Part 1. I understand that my consent is final (not revocable)." The form then provides space for notarization. The Brazas' form was notarized.

Under the notary block are three short paragraphs of information, the first of which reads, "General Information: Public Law 98-615 requires that a retiring, married employee whose annuity begins on or after May 7, 1985, must elect to provide a full survivor annuity for a current spouse, unless the current spouse consents to some other election by signing this form."

An additional form called "Attachment to SF 2801-2" deals with health coverage. This form is completed only by the spouse and notary. The form contains two statements, followed by a signature block. The statements read:

> I have freely consented to the survivor annuity election described on the attached SF 2801-2, Spouses Consent to Survivor Election.

> I understand that I will be ineligible to continue coverage under the Federal Employees Health Benefits (FEHB) Program if my spouse dies because I have consented to his/her election to provide no survivor annuity.

Mrs. Braza completed and signed this attachment as well, and it was also notarized.

The circumstances under which Mrs. Braza signed the waiver forms are undisputed, and based on Mrs. Braza's recollection of the events. Mr. Braza handled all of the family's financial affairs. Mrs. Braza did not know what bills came in, what bank accounts Mr. Braza had, what his earnings were, or what credit cards he possessed. On December 20, 2002, Mr. and Mrs. Braza went to a local bank while they were running errands. Mr. Braza presented his wife with form SF 2801-2 and the attachment and requested her signature before a notary public at the bank. Mrs. Braza had not seen these forms before. Neither the notary nor Mr. Braza explained the form to Mrs. Braza, and she did not ask for any explanation. She did not read the form before signing it. Mrs. Braza explains that she signed the form because she trusted her husband. The administrative judge adjudicating the case for the Board found credible Mrs. Braza's recount of the events and her allegation that she was not aware of her right to a CSRS survivor annuity and did not understand the effect on that right of signing the waiver.

The administrative judge explained that although he believed Mrs. Braza's allegations, he was compelled to follow controlling Board precedent in Steele v. Office of Personnel Management, 57 M.S.P.R. 458 (1993). The administrative judge in Steele found that a spouse who signed an OPM consent form indicating a reduced survivor annuity did not understand the consequences of signing the spousal consent form. The Board concluded, however, that the spouse's "freely made choice" when she signed the form was not "voidable" based on her unilateral mistake. Steele, 57 M.S.P.R. at 464 (citing Office of Personnel Management v. Richmond, 496 U.S. 414, 428-30 (1990) for the proposition that a government employee is not entitled to benefits if his eligibility for

those benefits was lost due to his reliance on mistaken advice). The Board in Mrs. Braza's case thus concluded that Mrs. Braza's lack of appreciation for her rights or for the effect of signing the form did not invalidate the waiver of her entitlement to annuity benefits.

Mrs. Braza timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(9). The controlling standard of review requires this court to set aside a decision of the MSPB only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

## DISCUSSION

Under this court's precedent, the voluntary signing of a government form for the purpose of evidencing agreement with the terms of the form is binding, and the government is entitled to rely on the act of signing absent a showing of fraud, duress, or mental incompetence. Collins v. Office of Pers. Mgmt., 45 F.3d 1569, 1573 (Fed. Cir. 1995).

Mrs. Braza does not deny on appeal that she consented to her husband's election to provide her no survivor annuity. She contends, however, that her consent is not a valid waiver of her statutory right to an annuity as required by the statute. Mrs. Braza raises two main arguments in support of this contention. First, she argues that the form was insufficient to provide adequate notice of her statutory right and of the effect on that right of signing the form, and therefore is not evidence of a waiver. Second, she argues that the circumstances under which she signed the form are

inconsistent with finding a knowing waiver of a known right, and that the waiver is thus invalid under Supreme Court precedent. We address each argument in turn.

With respect to the adequacy of the notice, we hold that the OPM Spousal Consent to Survivor Election form in use at the time of Mr. Braza's retirement was sufficient to inform a reader of his or her statutory rights as a spouse and was sufficient to inform him or her of the effect on those rights of signing the form. The form clearly states that the law requires an employee to provide a full survivor annuity for a current spouse. The form states that this annuity will be waived only if the spouse so consents. The form states that "signing this form" constitutes consent to the annuity election. Mr. Braza's election of no survivor annuity is clearly marked in the top section of the form. The attachment to the form reiterates the effect of the form in alternate, and also clear, language. The attachment confirms that the spouse freely consented to the election on the form. It states that the spouse will not receive health benefits after the employee dies because the spouse has consented to the employee election to provide no survivor annuity. The words "no survivor annuity" are the last words before the signature line.

Although the form does not use the words "statutory right," as Mrs. Braza contends it should, it cites the relevant statute by number and accurately refers to the statute as "Public Law." Similarly, although the form uses words like "elect" and "consent" instead of "right" and "waiver," the language of the form nonetheless conveys the meaning of the statute. It does so by stating the mandatory nature of the requirement for an employee to provide a full survivor annuity, that electing no survivor annuity is conditioned on the consent of the spouse, and the legal effect of consenting

to that election by signing the form.  The statute itself describes a valid joint waiver as "a written election filed with [OPM]."  5 U.S.C. § 8339(j)(1) (emphasis added).

Not only is the relevant language of form SF 2801-2 and its attachment clear, but the presentation of that language is sufficiently accessible.  The spousal consent form and the attachment are each a single page in length.  The sentences explaining the law and the consequences of the election are not buried among numerous provisions or obscured by unrelated information.  The effect of signing the form is communicated at least three times in three different ways between the two pages.  The form thus provides sufficient notice to alert readers to its consequences upon reasonable review and is explicit enough for the act of signing the form to evidence agreement with the terms of the form.  See Collins, 45 F.3d at 1573.

Mrs. Braza's unawareness of her rights and of the significance of the form were not due to any insufficiency in the form, but rather to her admitted failure to read the form.  No form, no matter how carefully drafted, would have educated Mrs. Braza against waiving her annuity if she did not read its contents before signing it.  Mrs. Braza's failure to read the form, and the circumstances promoting this failure, give rise to Mrs. Braza's second argument; that her waiver was unknowing and therefore is invalid.

We reject Mrs. Braza's second argument as well.  We affirm the controlling law of this circuit, under which a clear express written waiver of annuity benefits is invalid only if it was signed pursuant to fraud, duress, or mental incompetence.  See id.  In Collins, a CSRS retiree sought to void an election that he made at the time of his retirement not to make a deposit for credit for military service.  The form explained the choices available

and that the effect of electing not to make the deposit was a reduction in annuity when the retiree became eligible for Social Security benefits. Mr. Collins argued that he misunderstood the consequences of his election, and thus signed the form pursuant to a mistake. We held that he was nonetheless bound by his election absent a showing of mental incompetence, duress, or fraud. Id.

The Board decision emphasized Steele rather than Collins in its analysis. In challenging the Board's reliance on Steele, Mrs. Braza argues that Steele was wrongly decided. She argues that the standard set in Johnson v. Zerbst, 304 U.S. 458 (1938), rather than in Richmond, controls whether a waiver of a right is valid. We decline to comment here on whether Richmond actually compels the Board's finding in Steele. We find, however, that the Board's reliance on Steele in denying Mrs. Braza's claim is consistent with this court's precedent in Collins, and does not run afoul of the Supreme Court's decision in Zerbst.

Zerbst was a criminal case in which a defendant allegedly waived his right to counsel. The defendant was indicted, tried, convicted, sentenced, and incarcerated in the span of two days. He was not represented by counsel at any point, including on appeal. The Government alleged that the defendant waived his right to counsel, despite no explicit communication of waiver and no trial court finding on the matter. The Supreme Court, noting that courts indulge "every reasonable presumption against waiver of fundamental constitutional rights," ruled that the "determination whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case." Zerbst, 304 U.S. at 464.

The Supreme Court went on to impose on the trial court a duty to protect the accused's right to counsel from incompetent waiver. Id. at 465.

While courts have cited Zerbst in a variety of other contexts for the proposition that a valid waiver requires intentional relinquishment of a known right, the particular facts and circumstances surrounding Mrs. Braza's case are so different from those in Zerbst, that the Court's analysis there has only limited application here. For example, the right waived in this case is not a constitutional right, such as the right to counsel in a criminal case. Completing a standard election form may well not suffice for waiver of the right to counsel in a criminal trial, but the statute here states that it can provide a basis for finding a waiver of the right to a survivor annuity. Finally, the election of a larger lifetime annuity in place of a survivor annuity is not invariably contrary to the spouse's interests. Unlike the waiver of counsel, which is almost always improvident, there are many circumstances under which it is apt to be in the spouse's interest to choose the larger initial annuity rather than a survivor annuity.[1] It is therefore inappropriate to examine an annuity waiver as though it were a waiver of counsel.

That Mrs. Braza neglected to read the waiver form before signing it does not release her from the binding effect of the waiver under controlling law. Mrs. Braza does not allege duress, fraud, or mental incompetence, and the circumstances of her case would not support finding any. Mrs. Braza maintains that her consent was based on her

---

[1] For instance, it may be in the best interest of a couple to waive spousal annuity if the couple predicts that the surviving spouse will not outlive the retiree long enough to recoup the reduction in the retiree's lifetime annuity. The differences in age, gender, and health of the retiree and spouse thus inform the decision. It appears that Congress intended the various survivor annuity options to be equal in value from an actuarial standpoint.

trust in her husband's decision. That she now regrets having trusted her husband's decision is unfortunate, but it does not invalidate the waiver of her survivor annuity entitlement.

Accordingly, the decision of the MSPB is affirmed.

<u>AFFIRMED</u>

COSTS

Each party shall bear its own costs.

# United States Court of Appeals for the Federal Circuit

2008-3174

ELPIDIA L. BRAZA,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Petition for review of the Merit Systems Protection Board in DC0831070165-I-1.

DYK, <u>Circuit Judge</u>, with whom NEWMAN, <u>Circuit Judge</u>, joins, dissenting.

I respectfully dissent because, in my view, the Office of Personnel Management's ("OPM's") SF 2801-2 spousal consent form fails to provide the required statutory notice to the spouse of her right to receive a survivor annuity.

I

Survivor annuities have long been a feature of federal retirement plans. Before 1984, the civil service employee alone decided whether his spouse would receive a survivor annuity. <u>See</u> 5 U.S.C. § 8341(b)(1) (1982). The Civil Service Retirement Spouse Equity Act of 1984, Pub. L. No. 98-615, 98 Stat. 3195, was designed to remedy this situation in three ways: (1) it recognized the existing right to a survivor annuity; (2) it provided the spouse with a right to receive the annuity even if the employee waived the annuity; and (3) it required notice to the spouse (as well as the employee) of the statutory annuity right, and required the spouse to affirmatively waive the right to receive it. The Act provides that

> if an employee . . . dies after having retired under this subchapter and is survived by a widow or widower, <u>the widow or widower is entitled to an annuity</u> equal to 55 percent [of the employee's annuity] . . . <u>unless the right to a survivor annuity was waived</u> under . . . section 8339(j)(1) . . . .

<u>Id.</u> § 2(4)(B)(i), 98 Stat. at 3199 (codified at 5 U.S.C. § 8341(b)(1)) (emphases added).

Section 8339(j)(1) specifies that in order to waive the survivor annuity, "the employee . . . and the spouse [must] <u>jointly waive</u> the spouse's right to a survivor annuity in a <u>written election filed with [OPM]</u> at the time that the employee . . . retires." 5 U.S.C. § 8339(j)(1) (emphases added).

In passing the Act, Congress wanted to make certain that spouses knew of their statutory right to an annuity, and the consequences of an election. The legislative history of the Act evinces Congress's clear desire to "strengthen the election process" to ensure that both civil service employee and spouse "know <u>precisely</u> what will be gained or lost as a result of the election." H.R. Rep. No. 98-1054, at 12 (1984), <u>as reprinted in</u> 1984 U.S.C.C.A.N. 5540, 5543 (emphasis added). Representative Patricia Schroeder, the original sponsor of the Act, stated:

> Section 4 of H.R. 2300 would make survivor benefits mandatory unless the retiree, spouse, or former spouse . . . sign[s] a notarized waiver electing out of the survivorship plan. This "<u>informed consent</u>" procedure is urgently needed because many retirees are not <u>fully aware of the consequences</u> of their irrevocable decision at the time of retirement. When they later discover that they may have made a mistake, it is too late to correct it. Every week I receive frantic letters from widows of civil service employees who discovered after the death of the retiree that they have no survivor benefits and are facing economic devastation.

<u>Civil Service Spouse Retirement Equity Act: Hearing on H.R. 2300 Before the Subcomm. on Compensation and Employee Benefits of the H. Comm. on Post Office and Civil Service</u>, 98th Cong. 5 (1983) (emphases added). Congress thus intended that

spouses be provided adequate notice in order to understand their statutory rights prior to executing knowing and intentional waivers.

In other contexts, courts have recognized the importance of adequate notice for a waiver of statutory rights. See, e.g., Alexander v. Gardner-Denver Co., 415 U.S. 36, 52 n.15 (1974) ("In determining the effectiveness of any such waiver [of a cause of action under Title VII of the Civil Rights Act of 1964], a court would have to determine at the outset that the employee's consent to the settlement was voluntary and knowing."); Tierney v. Schweiker, 718 F.2d 449, 455–56 (D.C. Cir. 1983) (holding notice-and-consent forms for the release of confidential tax information by the IRS to the Social Security Administration invalid, in part for failure to set forth the individuals' rights, because "[w]ithout an understanding of their substantive and procedural rights, appellants cannot be said to have consented knowingly and voluntarily to the release of their tax information"); Parker v. DeKalb Chrysler Plymouth, 673 F.2d 1178, 1182 (11th Cir. 1982) (holding that purchaser's release of automobile dealer "from any and all claims" did not bar Truth in Lending Act claim where purchaser was not made aware that the release encompassed those rights).

We have been stringent as well in enforcing adequate notice requirements in the closely related area of survivor benefits following divorce. See, e.g., Hernandez v. Office of Pers. Mgmt., 450 F.3d 1332, 1335 (Fed. Cir. 2006) (holding that OPM failed to provide adequate notice that a civil service retiree must make an election in order to continue providing spousal survivor benefits following divorce); Wood v. Office of Pers. Mgmt., 241 F.3d 1364, 1366–67 (Fed. Cir. 2001) (same); Vallee v. Office of Pers. Mgmt., 58 F.3d 613, 615–16 (Fed. Cir. 1995) (same).

II

In my view, the SF 2801-2 spousal waiver form at issue in this case, denominated "Revised January 1990," did not come close to adequately informing spouses of retiring civil service employees of their statutory right to an annuity. A copy of the form Mrs. Braza signed is attached.[1] As can be seen, the form is divided into three parts requiring completion: Part 1 of the form is reserved for the retiring employee to indicate his survivor annuity election. Part 2 of the form consists simply of a line on which the retiring employee's spouse signs, beneath the following statement: "I freely consent to the survivor annuity election described in Part 1. I understand that my consent is final (not revocable)." Part 3 of the form is a standard notary signature block. The "Attachment to SF 2801-2," dealing with survivor health coverage, also attached, states:

> I have freely consented to the survivor annuity election described on the attached SF 2801-2, Spouse's Consent to Survivor Election.
>
> I understand that I will be ineligible to continue coverage under the Federal Employees Health Benefits (FEHB) Program if my spouse dies because I have consented to his/her election to provide no survivor annuity.

While the SF 2801-2 form states that by signing Part 2 a spouse consents to the election made by the employee in Part 1; that the consent is irrevocable; and that the spouse will receive a reduced survivor annuity or no annuity, nothing on the form adequately provides that, if the spouse does not sign, she will have a statutory right to

---

[1] To maintain privacy, the social security number on the form has been redacted. OPM revised its SF 2801-2 form in 2007. See U.S. Office of Pers. Mgmt., Standard Form 2801, Application for Immediate Retirement, at 16 (2007), available at http://www.opm.gov/forms/pdf_fill/SF2801.pdf. The old form almost certainly still affects hundreds of thousands of former federal employees.

receive her own annuity for her life if the employee-spouse predeceases her. The only notice given the spouse in the SF 2801-2 of the statutory right is one sentence at the bottom of the form, beneath the notary signature block, that states:

> General Information: Public Law 98-615 requires that a retiring, married employee whose annuity begins on or after May 7, 1985, must elect to provide a full survivor annuity for a current spouse, unless the current spouse consents to some other election by signing this form.

This sentence is part of a block of small-print text that describes among other things the rights of a divorced spouse and the usual boilerplate privacy rights.

Ironically, SF 2801, the separate form completed only by the employee, does describe the spouse's statutory right to a survivor annuity ("the law provides an annuity with full survivor benefits for your spouse unless your spouse consents to your election"), and explains that that right will be lost if the employee elects a self-only annuity and his spouse consents to that election. However, there is no requirement or suggestion on any of the forms that the consenting spouse read the form signed by the employee.

The majority, relying entirely on the "General Information" sentence at the bottom of the form, contends that the SF 2801-2 form "clearly states that the law requires an employee to provide a full survivor annuity for a current spouse." Majority Op. at 7. The form, however, is in fact far from clear. First and foremost, the text on the form is not likely to be understood by non-lawyers since it is written in legalese. It refers to "Public Law 98-615" instead of a "statutory right." The form further speaks to a <u>compelled election</u> by the employee, not the right of the spouse to receive the annuity, absent waiver. The difference in language masks the importance of the spouse's right and dramatically affects how the spouse may view the survivor annuity; it suggests that by

not signing the form, the spouse is compelling a disadvantageous election by her husband rather than claiming a benefit to which she is statutorily entitled.

Second, even if the notice could be understood, the notice is buried so that it is not likely to be read. The language appears labeled "General Information" at the bottom of the form, below the notary signature block, and the spouse is not invited to read it before signing, much less directed to read it before signing. As noted above, the text is also accompanied by various other provisions such as the rights of a divorced spouse and the usual boilerplate privacy rights. The language appears in small type.

Thus, even with adequate time to review the form, it is unlikely to be informative. And it is equally unlikely that spouses are typically given time to review the form at their leisure. The problem is well illustrated by the facts of this case, where Mrs. Braza's husband allowed her only a brief period of time to review the form before signing it. The government does not suggest that this is atypical. Indeed, the government cites a recent nonprecedential opinion of this court involving similar circumstances. See Scalese v. Office of Pers. Mgmt., 283 F. App'x 800, 803 (Fed. Cir. 2008). Particularly in this context and given the deficiencies in the form, it is simply unrealistic to expect those signing the form to read or understand the information essential to an effective waiver of their statutory right. Prominent and clear information is all the more essential given the real world context in which the forms are executed.

If this waiver appeared in a form used in the private sector, it would never be held to satisfy the notice requirements, under cases such as Alexander and Parker, cited earlier. The government must be governed by the same rules that it imposes on others. Because the SF 2801-2 spousal waiver form fails to provide adequate notice of the

statutory right to a survivor annuity absent the waiver, it fails to comply with the statute.[2]

I respectfully dissent.

---

[2]  I agree with the majority that if the form were compliant, signing of the form would automatically constitute a waiver absent a showing of fraud, duress, or mental incompetence.  Collins v. Office of Pers. Mgmt., 45 F.3d 1569, 1573 (Fed. Cir. 1995).  The reverse is not true, i.e., a waiver may occur if the spouse, despite a noncompliant form, was aware of the statutory right and the consequences of signing.  But here, the Administrative Judge found that Mrs. Braza did not have such knowledge, and therefore no waiver occurred.



# SPOUSE CONSENT TO SURVIVOR ELECTION

*(for retirements commencing on or after May 7, 1985, under the Civil Service Retirement System)*

**Instructions:** If you are married and you do not elect a reduced annuity to provide a full survivor annuity for your current spouse, complete Part 1. If you mark Item a, fill in the blank to show the amount of your annuity that you entered on SF 2801 or SF 2801-3. Have your spouse complete Part 2. Part 2 must be completed in the presence of a Notary Public or other person authorized to administer oaths (e.g., a Justice of the Peace). The Notary Public must complete Part 3.

## Part 1 - To Be Completed by the Retiring Employee

| Name *(Last, first, middle)* | Date of birth *(Month, day, year)* | Social Security Number |
|---|---|---|
| BRAZA EMILIANO OLEGARIO | 8/15/35 | ▮▮▮▮▮▮▮ |

I have elected: (Mark the box which describes the election you have made with regard to your current spouse.)

☐ a. A partial survivor annuity for my current spouse equal to:
- (1) 55% of $ _____ a year. (This agrees with my election in Section D, Item 1b, on my completed Standard Form 2801.)

    **OR**
- (2) _____ % of my annuity. (This agrees with my election on my completed SF 2801-3.)

☐ b. No regular survivor annuity for my current spouse, but I am electing an insurable interest survivor annuity for my current spouse. (I have completed Section D, Item 4, on my Standard Form 2801 naming my current spouse.)

☑ c. No regular or insurable interest survivor annuity for my current spouse.

## Part 2 - To Be Completed by the Current Spouse of the Retiring Employee

I freely consent to the survivor annuity election described in Part 1. I understand that my consent is final (not revocable).

| Name *(Type or print)* | Signature *(Do not print)* | Date |
|---|---|---|
| ELPIDIA L. BRAZA | *Elpidia L. Braza* | 12-10-2002 |

## Part 3 - To Be Completed by a Notary Public or Other Person Authorized to Administer Oaths

I certify that the person named in Part 2 presented identification (or was known) to me, gave consent, signed or marked this form and acknowledged that the consent was freely given in my presence on this

the 10 day of December, 2002, at Chesapeake VA .

(Month) (Year) (City and State)

| (SEAL) | Signature *Cynthia Wren* |
|---|---|
| | Expiration date of commission, if Notary Public  9·30·06 |

**General Information:** Public Law 98-615 requires that a retiring, married employee whose annuity begins on or after May 7, 1985, must elect to provide a full survivor annuity for a current spouse, unless the current spouse consents to some other election by signing this form.

A court order which requires a retiring employee to provide a survivor annuity for a former spouse is not an election and spousal consent is not required. In other words, such a court order does not require a current spouse to waive the right to a survivor annuity. The retiring employee can still elect to provide survivor annuity for the current spouse even though the Office of Personnel Management must honor the terms of the court order before it can honor the election for the current spouse. The current spouse may, therefore, receive a smaller annuity than elected, or none at all, unless the former spouse loses eligibility for the court-ordered survivor annuity (through remarriage before age 55 or death).

**Important:** If the current spouse consents to an election to provide no survivor annuity or a partial survivor annuity and is later divorced from the retired employee, the retired employee may not then elect (nor can OPM honor a court order) to provide a former spouse annuity for that spouse which exceeds the amount elected at retirement.

### PRIVACY ACT STATEMENT

Public Law 98-615, which establishes the spousal consent requirement, authorizes solicitation of this information. The data furnished will be used to determine the type of annuity awarded. The information may be shared and is subject to verification, via paper, electronic media, or through the use of computer matching programs, with national, state, local or other charitable or social security administrative agencies to determine and issue benefits under their programs. It may also be shared and verified, as noted above, with law enforcement agencies when they are investigating a violation or potential violation of the civil or criminal law. Executive Order 9397 (November 22, 1943) authorizes the use of the Social Security number to distinguish between people with similar names. Furnishing the Social Security number, as well as other data, is voluntary, but failure to do so may delay or prevent action on the retirement application.

U.S. Office of Personnel Management
FPM Supplement 830-1
National Stock Number: 7540-01-130-2056

Standard Form 2801-2
Previous editions are not usable
Revised January 1990

Attachment to SF 2801-2
Spouse's Consent to Survivor Election

**Part 1 – To Be Completed by the Current Spouse of Retiring Employee**

I have freely consented to the survivor annuity election described on the attached SF 2801-2, Spouse's Consent to Survivor Election.

I understand that I will be ineligible to continue coverage under the Federal Employees Health Benefits (FEHB) Program if my spouse dies because I have consented to his/her election to provide no survivor annuity.

| Name (Type or print) | Signature (Do not print) | Date |
|---|---|---|
| ELPIDIA L. BRAZA | Elpidia L. Braza | 12-10-2002 |

**Part 2 – To Be Completed by a Notary Public or Other Person Authorized to Administer Oaths**

I certify that the person named in Part 1 presented identification (or was known) to me, gave consent, signed or marked this form and acknowledged that the consent was freely given in my presence on this

The _10_ day of _Dec_, 20_02_, at _Chesapeake VA_
       (Month)      (Year)        (City and State)

| (SEAL) | Signature  Cynthia Weller |
|---|---|
| | Expiration date of commission, if Notary Public  9·30·06 |