NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CASANOVA HAMBRICK,**
*Petitioner*

**v.**

**UNITED STATES POSTAL SERVICE,**
*Respondent*

---

2016-1986

---

Petition for review of the Merit Systems Protection Board in No. DC-0752-14-0454-C-1.

---

Decided: October 7, 2016

---

CASANOVA HAMBRICK, Clarkton, NC, pro se.

ERIN MURDOCK-PARK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., BRIAN A. MIZOGUCHI.

---

Before PROST, *Chief Judge*, TARANTO, and HUGHES, *Circuit Judges.*

PER CURIAM.

Casanova Hambrick asked the Merit Systems Protection Board to enforce a settlement agreement he had reached with the United States Postal Service in an earlier appeal he had filed with the Board. The Board denied the request for enforcement on its merits as to all of the live claims of noncompliance with the settlement agreement that Mr. Hambrick had presented in his petition for enforcement. As to certain other, later-presented allegations of noncompliance, the Board referred those for separate consideration by a regional Board office. We affirm.

## BACKGROUND

In February 2014, the Postal Service removed Mr. Hambrick from his employment, based on a charge of misconduct. On February 14, 2014, Mr. Hambrick filed a Board appeal challenging his removal. While the appeal was pending, he voluntarily retired from the Postal Service, which, in turn, made a "terminal leave" payment to him in September 2014. The Postal Service made an initial calculation of a gross amount of $16,329.68 owed to Mr. Hambrick for accumulated untaken annual-leave and holiday hours. It then subtracted $5050.83 in certain withholdings—mostly or all, it appears, representing taxes owed by Mr. Hambrick on the gross amount—to arrive at a figure of $11,278.85. And it then further subtracted $307.14 that Mr. Hambrick owed for an unpaid health-insurance premium. Mr. Hambrick received a check for $10,971.71.

On November 6, 2014, Mr. Hambrick and the Postal Service entered into a "Settlement Agreement and Release" to resolve his Board appeal of his removal. Under the agreement, Mr. Hambrick would have his retirement cancelled and would return to work, and the Postal Service would pay him backpay from February 12, 2014, until he returned to work.

On November 7, 2014, the Board administrative judge issued an Initial Decision dismissing the appeal as settled and notifying the parties that the settlement agreement was entered into the Board's records to permit later Board enforcement if necessary. On December 12, 2014, that Initial Decision became final.

Upon Mr. Hambrick's reinstatement, the Postal Service issued him a debt-collection notice for $16,329.68—the gross amount the Postal Service had initially calculated in September 2014 when making its "terminal pay" payment to Mr. Hambrick upon his (now rescinded) retirement. Mr. Hambrick challenged the debt-collection notice before a postal administrative judge. On April 2, 2015, the Postal Service issued Mr. Hambrick its backpay check, and the amount of that check reflected a deduction of $16,329.68 as "repayment for accrued annual leave and holiday hours that [Mr. Hambrick was] paid shortly after voluntarily separating from the Agency." Resp. App. 23. The Postal Service informed the postal administrative judge that it "was no longer seeking collection of the $16,329.68 debt" (which it had just collected by reducing the backpay payment). Resp. App. 3. In response, on July 7, 2015, the postal administrative judge issued a "Final Decision under the Debt Collection Act of 1982," which stated that Mr. Hambrick's liability for the $16,329.68 was resolved, that the Postal Service was no longer seeking to collect that debt, and that "[t]he Postal Service may not collect that $16,329.68 debt at issue from [Mr. Hambrick] by involuntary administrative *salary* offset." Resp. App. 25–26 (emphasis added).

On September 21, 2015, Mr. Hambrick filed a petition for enforcement with the Board, arguing that the Postal Service had failed to comply with the 2014 "Settlement Agreement and Release." After receiving clarification as to the scope of the allegations from Mr. Hambrick's representative, the Postal Service submitted evidence to the Board administrative judge assigned to the petition for

enforcement. In his Initial Decision, the administrative judge characterized the Postal Service as having "provided unrefuted evidence to show that it properly paid" Mr. Hambrick the backpay required by the settlement agreement and as having "explained that it had properly deducted $16,329.68 from the gross back pay amount as repayment for accrued annual leave and holiday hours that [Mr. Hambrick] had been paid shortly after his separation" in 2014, while restoring those leave and holiday hours upon his reinstatement. Resp. App. 15; *see also id.* at 17. On that basis, the administrative judge concluded that Mr. Hambrick failed to prove a material breach of the settlement agreement and therefore denied the petition for enforcement.

On October 29, 2015, Mr. Hambrick petitioned the full Board for review of the Initial Decision. He argued (as the Board described the contentions) that the Postal Service "owe[d] him $5,357.97 because it collected the full $16,329.68 instead of the $10,971.71 payment he was issued in September 2014." Resp. App. 4–5. At a minimum, he argued, the Postal Service "failed to explain the $307.14 discrepancy between the $10,971.71 check and the net terminal payment of $11,278.85 recorded on the pay stub." Resp. App. 5. In his broadest contention, Mr. Hambrick also contended that the postal administrative judge's ruling dated July 7, 2015, precluded the Postal Service from enforcing the $16,329.68 debt by offsets from the otherwise-proper amount of backpay. *Id.* Lastly, Mr. Hambrick argued "that his gross back pay should have been $77,780 instead of $64,149.11." *Id.*

On March 8, 2016, the Board affirmed the administrative judge's decision to deny Mr. Hambrick's petition for enforcement of the settlement agreement. The Board found that the $16,329.68 deduction was proper because, "[t]aking into account tax withholding and voluntary deductions, the effect of the debt collection was to reduce the appellant's net back pay award by the amount of his

net terminal leave pay, i.e., \$11,278.85." Resp. App. 5. Regarding the \$307.14 amount Mr. Hambrick challenged as unexplained, the Board concluded that the amount was "subtracted to repay an outstanding health benefit invoice," as the Postal Service stated to Mr. Hambrick in a November 2014 email. *Id.* Further, the Board determined, Mr. Hambrick was misreading the postal administrative judge's order, which "did not require the agency to return the amount it had previously collected." *Id.* In sum, the Postal Service had complied with the terms of the Settlement Agreement. *Id.*

The Board added that Mr. Hambrick's other allegations of noncompliance were new. These included not only the allegation that his backpay "should have been \$77,780 instead of \$64,149.11" but allegations that "the agency failed to pay him \$156 per the terms of the settlement agreement and failed to restore all of the annual leave to which he is entitled" and an allegation concerning his Thrift Savings Plan account. Resp. App. 5. Stating that "allegations of noncompliance with a settlement agreement are properly a matter for initial consideration by the regional office on a petition for enforcement," the Board forwarded those claims to its Washington regional office. Resp. App. 6.

Mr. Hambrick appeals under 5 U.S.C. § 7703. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). The burden is on the petitioner to establish agency error. *McCrary v. Office of Pers. Mgt.*, 459 F.3d 1344, 1347 (Fed. Cir. 2006).

Mr. Hambrick has provided no basis for disturbing the Board's decision. With regard to the $16,329.68 offset from Mr. Hambrick's gross backpay, Mr. Hambrick has not demonstrated that there was a factual or legal error in the Postal Service's rationale for subtracting that full amount.

The Postal Service, in reinstating his unused annual-leave and holiday hours, concomitantly was recouping its payout to Mr. Hambrick for those unused hours in September 2014 upon his voluntary retirement. The gross amount of the September 2014 payout was $16,329.68, but the Postal Service withheld certain amounts before writing a check to Mr. Hambrick. Most importantly, it withheld $5,050.83 seemingly to pay to others, on his behalf, taxes (or other amounts) he owed on that gross amount. Later, when reversing the September 2014 transaction upon his reinstatement, the Postal Service recouped the gross amount from Mr. Hambrick, including the $5,050.83 it had withheld from him and seemingly paid to others on his behalf. While the Postal Service has not here elaborated on the logic of its full recoupment, neither has Mr. Hambrick established that the Postal Service was wrong in doing so—which seems to leave to Mr. Hambrick the task of determining whether he is entitled to recoup any of the $5,050.83 from those (*e.g.*, tax authorities) to whom it was paid, now that the September 2014 transaction has been unwound.

As to the $307.14 that the Postal Service has also subtracted from the September 2014 payment, the Postal Service clearly explained that this amount was what Mr. Hambrick owed on an outstanding health-benefit invoice. Mr. Hambrick has not undermined that explanation. He likewise has not undermined the Board's interpretation of the July 7, 2015 ruling by the postal administrative judge—namely, that the ruling reflected no more than the fact that the Postal Service had already collected the debt by reducing the backpay award. Under that common-

sense interpretation, the ruling offers Mr. Hambrick no support in his challenge to the amount of the backpay reduction.

Lastly, Mr. Hambrick has given us no basis for reviewing and setting aside the Board's treatment of certain other allegations of noncompliance with the earlier settlement agreement. Such other allegations were raised after his petition for enforcement. The Board referred them for further consideration to the Board's Washington Regional Office. We see no error in that Board action regarding what amount to new allegations of noncompliance. *See Hansson v. Dep't of Navy*, No. BN-0752-93-0120-C-2, 1994 WL 161227 (MSPB Apr. 22, 1994) ("When a settlement agreement has been entered into the record for enforcement purposes and a party raises issues of noncompliance with the settlement agreement on review, those issues relating to noncompliance will be forwarded to the regional office for processing as a petition for enforcement."), *aff'd*, 39 F.3d 1196 (Fed. Cir. 1994).

We also have no basis for disturbing the Board's decision here in light of Mr. Hambrick's contention that his salary upon reinstatement was lower than when he was removed. *See* Supp. Br. at 1–2. Mr. Hambrick did not present that contention in his petition for enforcement. Similarly, while Mr. Hambrick complains about where his backpay was deposited, *id.* at 2, we see no live issue: he conceded to the Board that "his contributions have been placed in the [a particular retirement] fund, as he requested," Resp. App. 5–6.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the Board.

No costs.

## **AFFIRMED**