Opinion for the court filed by Circuit Judge PROST, in which Chief Judge MICHEL and Circuit Judges MAYER, LOURIE, RADER, BRYSON, GAJARSA, LINN, and MOORE join.
PROST, Circuit Judge.
Elpidia L. Braza is the widow of a former government employee who retired under the Civil Service Retirement System (“CSRS”). In connection with his retirement, Mr. Braza completed and signed a standard retirement application form. On his form, Mr. Braza indicated that he elected to receive an annuity payable only *1317 during his lifetime, and did not wish to reduce his annuity to provide a survivor annuity for his spouse. Such an election can only be made with the consent of the retiree’s spouse. Shortly before his retirement took effect, Mrs. Braza completed and signed the standard spousal consent form, consenting to her husband’s survivor annuity election.
Following her husband’s death, Mrs. Braza filed a claim for a survivor annuity as the spouse of a deceased civil service employee. The Office of Personnel Management (“OPM”) denied Mrs. Braza’s claim, finding that she waived her entitlement to such annuity by completing and signing the standard form. Mrs. Braza petitioned for review before the Merit Systems Protection Board (“MSPB” or “Board”), arguing that the form bearing her signature did not validly waive her right to an annuity. The Board affirmed OPM’s decision.
Mrs. Braza appealed to this court, and argument was heard before a panel of three judges on December 4, 2008. Finding the matter of how to evaluate the validity of annuity waivers under the CSRS to be of exceptional importance, the court decided sua sponte to resolve the matter en banc. For the reasons explained below, the en banc court concludes that Mrs. Braza waived her right to the spousal annuity by completing and signing the written waiver form. Such written waiver is valid absent fraud, duress, or mental incompetence, none of which are present here. We therefore affirm the decision of the MSPB.
BACKGROUND
The Spouse Equity Act of 1984, Pub.L. No. 98-615, 98 Stat. 3195, was enacted to provide spouses of retired civil service employees with a default entitlement to a survivor annuity, and to ensure that spouses receive notice of, and consent to, a retiring employee’s election not to provide for a survivor annuity. The 1984 Act reads, in relevant part:
[I]f an employee ... dies after having retired under this subchapter and is survived by a widow or widower, the widow or widower is entitled to an annuity equal to 55 percent [of the employee’s annuity] ... unless the right to a surviv- or annuity was waived under such section 8339(j)(l)....
Id. § 2(4) (codified at 5 U.S.C. § 8341(b)). Section 8339(j)(l) provides that the retirement annuity of an employee who is married at the time he retires will be automatically reduced during his lifetime to take into account the cost of providing a surviv- or annuity for the spouse “unless the employee ... and the spouse jointly waive the spouse’s right to a survivor annuity in a written election filed with [OPM] at the time that the employee ... retires.” 5 U.S.C. § 8339(j)(l).
To provide for the “written election filed with [OPM]” jointly waiving the spouse’s annuity, OPM has issued a set of standard forms for employees and their spouses to complete and submit in connection with their annuity election. Mr. and Mrs. Braza completed and signed the version of these forms in effect at the time of his retirement, denominated “Revised January 1990.”
One such form is Standard Form (SF) 2801, entitled “Application for Immediate Retirement.” The section of the form providing for an annuity election states: “If you are married at retirement, the law provides an annuity with full survivor benefits for your spouse unless your spouse consents to your election not to provide maximum survivor benefits.” The form provides check boxes next to options for a full annuity, a reduced annuity, and no annuity. Mr. Braza initialed the option providing, “I CHOOSE AN ANNUITY *1318 PAYABLE ONLY DURING MY LIFETIME.” Next to the option elected by Mr. Braza are instructions to attach an SF 2801-2 showing spousal consent to the election. The form further explains: “If you are married at retirement, you cannot choose this type of annuity without your spouse’s consent. No survivor annuity will be paid to your spouse after your death if he or she consents to this election.”
The next form is SF 2801-2, entitled “Spouse’s Consent to Survivor Election.” The top part of the form is completed by the retiring employee. Mr. Braza filled in his name and selected the third of three options presented, which reads: “No regular or insurable interest survivor annuity for my current spouse.” Mrs. Braza then signed the middle part of the form, to be completed by the spouse, beneath the statement: “I freely consent to the surviv- or annuity election described in Part 1. I understand that my consent is final (not revocable).” The form then provides space for notarization. The Brazas’ form was notarized.
Under the notary block are three short paragraphs of information, the first of which reads, “General Information: Public Law 98-615 requires that a retiring, married employee whose annuity begins on or after May 7, 1985, must elect to provide a full survivor annuity for a current spouse, unless the current spouse consents to some other election by signing this form.”
An additional form called “Attachment to SF 2801-2” deals with health coverage. This form is completed only by the spouse and notary. The form contains two statements, followed by a signature block. The statements read:
I have freely consented to the survivor annuity election described on the attached SF 2801-2, Spouses Consent to Survivor Election.
I understand that I will be ineligible to continue coverage under the Federal Employees Health Benefits (FEHB) Program if my spouse dies because I have consented to his/her election to provide no survivor annuity.
Mrs. Braza completed and signed this attachment as well, and it was also notarized.
The circumstances under which Mrs. Braza signed the waiver forms are undisputed, and based on Mrs. Braza’s recollection of the events. Mr. Braza handled all of the family’s financial affairs. Mrs. Braza did not know what bills came in, what bank accounts Mr. Braza had, what his earnings were, or what credit cards he possessed. On December 20, 2002, Mr. and Mrs. Braza went to a local bank while they were running errands. Mr. Braza presented his wife with form SF 2801-2 and the attachment and requested her signature before a notary public at the bank. Mrs. Braza had not seen these forms before. Neither the notary nor Mr. Braza explained the form to Mrs. Braza, and she did not ask for any explanation. She did not read the form before signing it. Mrs. Braza explains that she signed the form because she trusted her husband. The administrative judge adjudicating the case for the Board found credible Mrs. Braza’s recount of the events and her allegation that she was not aware of her right to a CSRS survivor annuity and did not understand the effect on that right of signing the waiver.
The administrative judge explained that although he believed Mrs. Braza’s allegations, he was compelled to follow controlling Board precedent in Steele v. Office of Personnel Management, 57 M.S.P.R. 458 (1993). The administrative judge in Steele found that a spouse who signed an OPM consent form indicating a reduced survivor annuity did not understand the consequences of signing the spousal consent form. The Board concluded, however, that the spouse’s “freely made choice” when *1319 she signed the form was not “voidable” based on her unilateral mistake. Steele, 57 M.S.P.R. at 464 (citing Office of Personnel Management v. Richmond, 496 U.S. 414, 428-30, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) for the proposition that a government employee is not entitled to benefits if his eligibility for those benefits was lost due to his reliance on mistaken advice). The Board in Mrs. Braza’s case thus concluded that Mrs. Braza’s lack of appreciation for her rights or for the effect of signing the form did not invalidate the waiver of her entitlement to annuity benefits.
Mrs. Braza timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(9). The controlling standard of review requires this court to set aside a decision of the MSPB only if it is “(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence.” 5 U.S.C. § 7703(c).
DISCUSSION
Under this court’s precedent, the voluntary signing of a government form for the purpose of evidencing agreement with the terms of the form is binding, and the government is entitled to rely on the act of signing absent a showing of fraud, duress, or mental incompetence. Collins v. Office of Pers. Mgmt., 45 F.3d 1569, 1573 (Fed.Cir.1995).
Mrs. Braza does not deny on appeal that she consented to her husband’s election to provide her no survivor annuity. She contends, however, that her consent is not a valid waiver of her statutory right to an annuity as required by the statute. Mrs. Braza raises two main arguments in support of this contention. First, she argues that the form was insufficient to provide adequate notice of her statutory right and of the effect on that right of signing the form, and therefore is not evidence of a waiver. Second, she argues that the circumstances under which she signed the form are inconsistent with finding a knowing waiver of a known right, and that the waiver is thus invalid under Supreme Court precedent. We address each argument in turn.
With respect to the adequacy of the notice, we hold that the OPM Spousal Consent to Survivor Election form in use at the time of Mr. Braza’s retirement was sufficient to inform a reader of his or her statutory rights as a spouse and was sufficient to inform him or her of the effect on those rights of signing the form. The form clearly states that the law requires an employee to provide a full survivor annuity for a current spouse. The form states that this annuity will be waived only if the spouse so consents. The form states that “signing this form” constitutes consent to the annuity election. Mr. Braza’s election of no survivor annuity is clearly marked in the top section of the form. The attachment to the form reiterates the effect of the form in alternate, and also clear, language. The attachment confirms that the spouse freely consented to the election on the form. It states that the spouse will not receive health benefits after the employee dies because the spouse has consented to the employee election to provide no survivor annuity. The words “no survivor annuity” are the last words before the signature line.
Although the form does not use the words “statutory right,” as Mrs. Braza contends it should, it cites the relevant statute by number and accurately refers to the statute as “Public Law.” Similarly, although the form uses words like “elect” and “consent” instead of “right” and “waiver,” the language of the form nonetheless conveys the meaning of the statute. It *1320 does so by stating the mandatory nature of the requirement for an employee to provide a full survivor annuity, that electing no survivor annuity is conditioned on the consent of the spouse, and the legal effect of consenting to that election by signing the form. The statute itself describes a valid joint waiver as “a written election filed with [OPM].” 5 U.S.C. § 8339(j)(l) (emphasis added).
Not only is the relevant language of form SF 2801-2 and its attachment clear, but the presentation of that language is sufficiently accessible. The spousal consent form and the attachment are each a single page in length. The sentences explaining the law and the consequences of the election are not buried among numerous provisions or obscured by unrelated information. The effect of signing the form is communicated at least three times in three different ways between the two pages. The form thus provides sufficient notice to alert readers to its consequences upon reasonable review and is explicit enough for the act of signing the form to evidence agreement with the terms of the form. See Collins, 45 F.3d at 1573.
Mrs. Braza’s unawareness of her rights and of the significance of the form were not due to any insufficiency in the form, but rather to her admitted failure to read the form. No form, no matter how carefully drafted, would have educated Mrs. Braza against waiving her annuity if she did not read its contents before signing it. Mrs. Braza’s failure to read the form, and the circumstances promoting this failure, give rise to Mrs. Braza’s second argument; that her waiver was unknowing and therefore is invalid.
We reject Mrs. Braza’s second argument as well. We affirm the controlling law of this circuit, under which a clear express written waiver of annuity benefits is invalid only if it was signed pursuant to fraud, duress, or mental incompetence. See id. In Collins, a CSRS retiree sought to void an election that he made at the time of his retirement not to make a deposit for credit for military service. The form explained the choices available and that the effect of electing not to make the deposit was a reduction in annuity when the retiree became eligible for Social Security benefits. Mr. Collins argued that he misunderstood the consequences of his election, and thus signed the form pursuant to a mistake. We held that he was nonetheless bound by his election absent a showing of mental incompetence, duress, or fraud. Id.
The Board decision emphasized Steele rather than Collins in its analysis. In challenging the Board’s reliance on Steele, Mrs. Braza argues that Steele was wrongly decided. She argues that the standard set in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), rather than in Richmond, controls whether a waiver of a right is valid. We decline to comment here on whether Richmond actually compels the Board’s finding in Steele. We find, however, that the Board’s reliance on Steele in denying Mrs. Braza’s claim is consistent with this court’s precedent in Collins, and does not run afoul of the Supreme Court’s decision in Zerbst.
Zerbst was a criminal case in which a defendant allegedly waived his right to counsel. The defendant was indicted, tried, convicted, sentenced, and incarcerated in the span of two days. He was not represented by counsel at any point, including on appeal. The Government alleged that the defendant waived his right to counsel, despite no explicit communication of waiver and no trial court finding on the matter. The Supreme Court, noting that courts indulge “every reasonable presumption against waiver of fundamental constitutional rights,” ruled that the “determination whether there has been an *1321 intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case.” Zerbst, 304 U.S. at 464, 58 S.Ct. 1019. The Supreme Court went on to impose on the trial court a duty to protect the accused’s right to counsel from incompetent waiver. Id. at 465, 58 S.Ct. 1019.
While courts have cited Zerbst in a variety of other contexts for the proposition that a valid waiver requires intentional relinquishment of a known right, the particular facts and circumstances surrounding Mrs. Braza’s case are so different from those in Zerbst, that the Court’s analysis there has only limited application here. For example, the right waived in this case is not a constitutional right, such as the right to counsel in a criminal case. Completing a standard election form may well not suffice for waiver of the right to counsel in a criminal trial, but the statute here states that it can provide a basis for finding a waiver of the right to a survivor annuity. Finally, the election of a larger lifetime annuity in place of a survivor annuity is not invariably contrary to the spouse’s interests. Unlike the waiver of counsel, which is almost always improvident, there are many circumstances under which it is apt to be in the spouse’s interest to choose the larger initial annuity rather than a survivor annuity.[1] It is therefore inappropriate to examine an annuity waiver as though it were a waiver of counsel.
That Mrs. Braza neglected to read the waiver form before signing it does not release her from the binding effect of the waiver under controlling law. Mrs. Braza does not allege duress, fraud, or mental incompetence, and the circumstances of her case would not support finding any. Mrs. Braza maintains that her consent was based on her trust in her husband’s decision. That she now regrets having trusted her husband’s decision is unfortunate, but it does not invalidate the waiver of her survivor annuity entitlement.
Accordingly, the decision of the MSPB is affirmed.

AFFIRMED

COSTS
Each party shall bear its own costs.
Dissenting opinion filed by Circuit Judge DYK, in which Circuit Judge NEWMAN joins.

. For instance, it may be in the best interest of a couple to waive spousal annuity if the couple predicts that the surviving spouse will not outlive the retiree long enough to recoup the reduction in the retiree’s lifetime annuity. The differences in age, gender, and health of the retiree and spouse thus inform the decision. It appears that Congress intended the various survivor annuity options to be equal in value from an actuarial standpoint.