# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

ANN M. HERRINGDINE,
              Appellant,

              v.

OFFICE OF PERSONNEL
    MANAGEMENT,
              Agency.

DOCKET NUMBER
AT-0831-17-0179-I-1

DATE: January 24, 2023

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Thomas M. Leveille</u>, Esquire, Knoxville, Tennessee, for the appellant.

<u>Karla W. Yeakle</u>, Washington, D.C., for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

### FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which affirmed the final decision by the Office of Personnel Management (OPM) finding that she was not eligible for an increased survivor annuity. Generally, we grant petitions such as this one only in the following circumstances:  the initial

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review.  Therefore, we DENY the petition for review.  Except as expressly MODIFIED by this final order to supplement the administrative judge's analysis of the appellant's claim that her late husband's election was invalid on the basis of mental incompetence and to address her claim that her consent to his election resulted from fraud in the inducement, we AFFIRM the initial decision.

## BACKGROUND

¶2        The appellant's late husband retired from the U.S. Postal Service under the Civil Service Retirement System (CSRS) effective November 2, 2011.  Initial Appeal File (IAF), Tab 6 at 54.  On her husband's application for retirement, Standard Form (SF) 2801, he chose a reduced annuity with a partial survivor annuity for the appellant equal to 55 percent of $22 per year.[2]  *Id.* at 45, 48.  The appellant signed a "Spouse's Consent to Survivor Election" form, SF 2801-2, before a notary public on October 7, 2011, indicating her consent to her husband's election of a partial survivor annuity for her of 55 percent of $22 per

---

[2] The amount elected by the appellant's husband, $22 per year, is the lowest dollar base that may be elected for a survivor annuity.  OPM Benefits Administration Letter, No. 00-102 (Mar. 8, 2000).  Fifty-five percent of $22 per year provides a survivor benefit of $1 per month and allows the surviving spouse to continue Federal Employees Health Benefits coverage.  *Id.*

year.[3] *Id.* at 48. The appellant's husband passed away on April 21, 2015, and she filed an application for death benefits with OPM. *Id.* at 18-23. OPM approved the appellant's application and began paying her a survivor annuity benefit in the amount of $5 per month.[4] *Id.* at 6, 14.

¶3 On June 19, 2015, the appellant requested that OPM review its decision regarding the amount of her monthly survivor annuity benefit. *Id.* at 16-17. She stated that she was "totally shocked" by the amount of her monthly survivor annuity and that she would not have signed the consent form if someone had explained to her that she would only receive $5 per month after her husband's death. *Id.* at 16. She stated that her husband told her that, in the event of his death, she would receive a gross monthly annuity of $2,647, as indicated on a September 9, 2011 annuity estimate printout, or about half of his current monthly annuity benefit. *Id.* at 16, 57. She further stated that her husband must not have understood the effect of his election and that, in the years leading up to his retirement and thereafter, he suffered from a number of medical conditions and a "deteriorated" mental status. *Id* at 16-17. In a March 1, 2016 initial decision, OPM found that, given the joint election of the appellant and her husband at the time of his retirement, the rate of $5 per month was correct. *Id.* at 12.

¶4 The appellant requested reconsideration of OPM's decision, again stating that her late husband told her she would receive about half of his current monthly gross annuity benefit after his death and that he suffered from a number of

---

[3] The record also contains a signed and notarized SF 2801-2 dated September 16, 2011, indicating the appellant's consent to her husband's election of a partial survivor annuity in the amount of 55 percent of $22 per year. IAF, Tab 3, Exhibit 2 at 5. It appears that the appellant's late husband also checked the option for an insurable interest survivor annuity on this form, which he then covered with his initials. *Id*. Although OPM mentioned the September 16, 2011 form in its March 1, 2016 initial decision, IAF, Tab 6 at 12, it based its reconsideration decision on the SF 2801-2 executed on October 7, 2011, *id.* at 6.

[4] The record reflects that the appellant's monthly annuity increased to $6 in December 2016. IAF, Tab 6 at 15. It is unclear, however, why the appellant receives $5 or $6 per month, given that 55 percent of $22 per year amounts to $1 per month.

physical and mental conditions around the time of his retirement. IAF, Tab 6 at 11. She further stated that her late husband showed her a retirement plan report dated September 30, 2011, showing a gross monthly survivor annuity benefit of $2,647, and that she signed the spousal consent form "without questioning how it was computed." *Id.* In a final decision dated November 15, 2016, OPM affirmed its initial decision, stating that the appellant freely consented to her husband's election when she signed the SF 2801-2 on October 7, 2011, and that OPM had no record that she contested her consent at any time between the date she signed it before a notary and her husband's death. *Id.* at 6-8. OPM further noted that it had no record showing that her late husband was incompetent at the time of his retirement and that, although he could have changed his election within 18 months of making it, OPM had no record of him attempting to do so. *Id.*

¶5     The appellant timely appealed OPM's final decision to the Board, arguing as follows: she was "misinformed as to what [her] survivor benefit would be by information [shown to her by her] husband"; her husband did not understand his election due to his medical conditions; and she signed the spousal consent form believing that, in the event of her husband's death, she would receive half of his monthly annuity benefit. IAF, Tab 1 at 3. The appellant submitted medical records showing that, from 2010 through 2013, her husband suffered from a number of serious medical conditions and underwent several surgeries, including amputation of one of his toes followed by amputation of his entire left forefoot. IAF, Tab 3, Exhibit 3. She also submitted a letter from her husband's former supervisor opining that the appellant's husband "was becoming mentally challenged at the end of 2010 . . . especially at retirement." IAF, Tab 3, Exhibit 8. In another submission, the appellant stated that "[y]es, I did sign the retirement papers without my [sic] questioning the figures simply based on my belief that what I was shown and told to be the truth. I would never have signed anything had I known that all I would be eligible for was $5." IAF, Tab 8.

¶6	After holding the appellant's requested hearing, the administrative judge issued an initial decision finding that the appellant's consent was valid and that OPM met its burden of showing that it sent the required notice to the appellant's late husband regarding his option to provide or increase a spouse's survivor annuity within 18 months of his retirement.  IAF, Tab 11, Initial Decision (ID).  She further found that the evidence did not support the appellant's assertion that her husband was mentally incompetent when he retired.  ID at 4 n.3.  Thus, she affirmed OPM's final decision.  ID at 7.

¶7	The appellant, now represented by counsel, has filed a petition for review of the initial decision arguing that she and her husband did not make a valid joint election of a partial survivor annuity because of the following:  (1) her husband was mentally incompetent at the time of his election; (2) her consent was induced by fraud; and (3) the spousal consent form was confusing and fails to meet the notice and consent requirements of the Spouse Equity Act.  Petition for Review (PFR) File, Tab 1.  The agency has responded in opposition to the appellant's petition for review.  PFR File, Tab 4.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶8	The surviving spouse of a CSRS retiree is entitled to a survivor annuity in the amount of 55 percent of the retiree's annuity unless the retiree elected not to provide a survivor annuity or to provide only a partial survivor annuity, and the spouse consented to the election in writing.  5 U.S.C. §§ 8339(j)(1), 8341(b)(1); *Cerilli v. Office of Personnel Management*, 119 M.S.P.R. 404, ¶ 5 (2013); 5 C.F.R. § 831.614.  A retiree may, within 18 months after retirement, choose to elect a survivor annuity for the spouse to whom he was married at retirement if he did not previously do so or to increase the size of such an annuity.  5 U.S.C. § 8339(o)(1); *Cerilli*, 119 M.S.P.R. 404, ¶ 5; 5 C.F.R. § 831.622(b)(1).

¶9	Here, it is undisputed that the appellant's late husband timely elected a partial survivor annuity equal to 55 percent of $22 per year for the appellant and

that she signed a SF 2801-2 before a notary public on October 7, 2011, indicating her consent to his election. IAF, Tab 6 at 45, 48. In addition, the appellant has not challenged, and we discern no basis to disturb, OPM's finding that the appellant's late husband did not seek to amend his survivor annuity election during the 18 months following his retirement, despite being notified of his opportunity to do so.[5] *Id.* at 7, 24-31. As noted above, however, the appellant argues on review that she is entitled to an increased survivor annuity because she and her late husband did not make a valid joint election of a partial survivor annuity. PFR File, Tab 1.

¶10    The U.S. Court of Appeals for the Federal Circuit has held that the voluntary signing of a Government form for the purpose of evidencing agreement with the terms of the form is binding, and the Government is entitled to rely on the act of signing absent a showing of fraud, duress, or mental incompetence. *Braza v. Office of Personnel Management*, 598 F.3d 1315, 1319 (Fed. Cir. 2010) (en banc); *Collins v. Office of Personnel Management*, 45 F.3d 1569, 1573 (Fed. Cir. 1995). The appellant, as the applicant for a survivor annuity and as the individual seeking to change the annuity agreement of record, has the burden to show her entitlement to the benefit she seeks by preponderant evidence. *See Cheeseman v. Office of Personnel Management*, 791 F.2d 138, 140-41 (Fed. Cir. 1986); *Dombeck v. Office of Personnel Management*, 43 M.S.P.R. 43, 45-46 (1989). A preponderance of the evidence is that degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient

---

[5] OPM has a statutory obligation to notify annuitants annually that they have 18 months after retirement to provide or increase a spouse's survivor annuity. 5 U.S.C. § 8339(o)(6); *Cerilli*, 119 M.S.P.R. 404, ¶ 6. OPM bears the burden of proving that the notice was sent as well as proving the contents of the notice. *Cerilli*, 119 M.S.P.R. 404, ¶ 6. The administrative judge found, and the appellant does not dispute on review, that OPM met its burden of showing that it sent the required notice to the appellant's late husband regarding his option to change his survivor annuity election within 18 months of his retirement. ID at 5-6. We have reviewed the record and discern no basis to disturb this finding. *See* IAF, Tab 6 at 24-31.

to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

<u>The appellant has not shown by preponderant evidence that her late husband was mentally incompetent as to render his election invalid.</u>

¶11   In the initial decision, the administrative judge found that the record evidence was insufficient to establish that the appellant's late husband was mentally incompetent at the time of his retirement and survivor annuity election. ID at 4 n.3.  The appellant challenges this finding on review, arguing that the administrative judge and OPM gave her argument "short shrift."  PFR File, Tab 1 at 12-16.  She further argues that the record evidence establishes that her late husband was mentally incompetent at the time of his survivor annuity election and urges the Board to find that his election was not effective.  *Id.*  For the reasons that follow, we agree with the administrative judge's determination that the appellant has not met her burden to show that her late husband's survivor annuity election was invalid on the basis of mental incompetence.  However, we modify the initial decision consistent with this section to further address the appellant's argument and the medical evidence.

¶12   Annuity elections are only valid if made by mentally competent individuals. *Dombeck*, 43 M.S.P.R. at 45-46.  Although such competency is presumed absent challenge, the spouse can demonstrate that the annuitant lacked the requisite capacity to make a valid election.  *Pooler v. Office of Personnel Management*, 23 M.S.P.R. 51, 53 (1984).  The relevant standard for mental incompetence is "an inability to handle one's personal affairs because of either physical or mental disease or injury."  *Rapp v. Office of Personnel Management*, 483 F.3d 1339, 1341 (Fed. Cir. 2007); *Magelitz v. Office of Personnel Management*, 118 M.S.P.R. 472, ¶ 11 (2012).  The Board requires medical evidence to substantiate a claim of mental incompetence.  *See Thieken v. Office of Personnel Management*, 56 M.S.P.R. 192, 194, *aff'd*, 11 F.3d 1074 (Fed. Cir. 1993) (Table).

¶13     Here, as noted above, the appellant submitted medical evidence showing that, in 2010, her husband had one of his toes amputated due to a diabetic ulcer and later had his entire left forefoot amputated. IAF, Tab 3, Exhibit 3 at 2-8. The records further show that, from 2010 through 2013, he suffered from type 2 diabetes, coronary artery disease, hypertension, sleep apnea, arthritis, kidney disease, malnutrition, anemia, possible seizures, and light-headedness. *Id.* at 4-5, 10, 13, 16, 23, 25. In a February 28, 2012 consultation report, the medical provider indicated that the appellant's husband was hospitalized due to an acute kidney injury following a "two day history of progressive changes in mental status with predominant agitation." *Id.* at 9-10. An August 15, 2012 mental capacity assessment indicates, however, that he could "manage benefits in [his] own best interest" and did not have any limitations in understanding and memory, sustained concentration and persistence, adaptation, or social interaction. *Id.* at 17-22.

¶14     The appellant also submitted a September 8, 2014 Social Security Administration (SSA) decision finding her late husband disabled as of November 1, 2011. IAF, Tab 3, Exhibit 4 at 8-15. The decision thoroughly discussed his medical conditions and determined that his coronary artery disease, end stage renal disease with dialysis, and insulin-dependent diabetes with retinopathy and neuropathy resulting in amputation of toes on the left foot were "severe." *Id.* at 10. The decision noted that his primary care physician prescribed him Sertraline, which was "effective in controlling [his] anger and mood." *Id.* at 12.

¶15     In addition, as noted above, the appellant submitted a letter from her husband's former supervisor in which he opined that the appellant's late husband was becoming "mentally challenged" in 2010. IAF, Tab 3, Exhibit 8. He further indicated that he did "not think that [the appellant's late husband] was mentally capable of making a decision of such an important nature as properly thinking

through and signing his retirement paperwork [and that] in his 'right mind' he would not have denied [the appellant] the full benefit of a spousal annuity." *Id.*

¶16 Although it is clear that the appellant's late husband suffered from a number of serious medical conditions in the years before and after his retirement, the references in the record to his mental health issues—namely, that he suffered from a 2-day period of "progressive changes in mental status with predominant agitation" in 2012 and had mood and anger issues that were controlled with medication—do not establish that he could not handle his personal affairs during the relevant period. *See Rapp*, 483 F.3d at 1341. To the contrary, the August 15, 2012 mental capacity assessment specifically indicates that he could manage benefits in his own best interest. IAF, Tab 3, Exhibit 3 at 19. Absent any medical evidence showing that the appellant's late husband was mentally incompetent when he elected a partial survivor annuity in October 2011 or at any time during the following 18 months, the subjective opinions of the appellant and her late husband's former supervisor that he was mentally incompetent are unpersuasive. *See Thieken*, 56 M.S.P.R. at 194. Accordingly, we find no basis to disturb the administrative judge's determination that the appellant's late husband's survivor annuity election may not be set aside on the basis of mental incompetence.

The appellant has not shown by preponderant evidence that her consent to her late husband's election is invalid on the basis of fraud in the inducement.

¶17 The appellant next argues that, if her late husband was not mentally incompetent, then he obtained her consent to his election to a partial annuity to receive an increased annuity during his lifetime through fraud in the inducement by assuring her that she would receive about half of his monthly annuity benefit in the event of his death. PFR File, Tab 1 at 18-22. Although the appellant invokes the term "fraud in the inducement" for the first time on review, she asserts that she "clearly raised" this argument below when she alleged, among other things, the following in her Board pleadings: her late husband showed her

the paperwork reflecting that she would receive a survivor annuity in the amount of $2,647 per month and told her that she would receive approximately half of his monthly annuity benefit as a survivor annuity; she received incorrect information and was led "to believe that she would be taken care of with his ongoing spousal annuity payments in the event of his death"; she felt she was greatly misled as to her benefits; and she was given "misinformation" about what she would receive in the event of her husband's death. *Id.* at 18-20. We agree that she sufficiently raised this argument below and so we consider it on review. *See Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980); IAF, Tabs 1, 3, 8. For the reasons that follow, however, we find that the appellant has not shown that her consent to her late husband's election was invalid on the basis of fraud in the inducement.

¶18　　　As stated above, the clear statutory language provides that the surviving spouse of a CSRS annuitant is entitled to an annuity equal to 55 percent of his annuity unless, at the time of his retirement, the annuitant elected to provide no survivor annuity or a partial survivor annuity, and the spouse consented to the election in writing. 5 U.S.C. §§ 8339(j)(1), 8341(b)(1); 5 C.F.R. § 831.614. Thus, the relevant inquiry in determining whether the appellant met her burden of proving her entitlement to an increased survivor annuity benefit is whether she effected a valid waiver of her right to one when she consented in writing to her husband's election of a partial annuity in the amount of 55 percent of $22 per year. *See Luten v. Office of Personnel Management*, 110 M.S.P.R. 667, ¶ 10 (2009). Although a "freely made choice" concerning a survivor annuity is not voidable on the basis of a unilateral mistake, a waiver of annuity benefits may be set aside as invalid if it resulted from fraud. *See Braza*, 598 F.3d at 1320; *Steele v. Office of Personnel Management*, 57 M.S.P.R. 458, 464 (1993), *aff'd*, 50 F.3d 21 (Fed. Cir. 1995) (Table).

¶19　　　"Fraud in the inducement" is defined as "occurring when a misrepresentation leads another to enter into a transaction with a false impression

of the risks, duties, or obligations involved; an intentional misrepresentation of a material risk or duty reasonably relied on, thereby injuring the other party without vitiating the contract itself." *Wofford v. Department of Justice*, 115 M.S.P.R. 468, ¶ 7 (2010) (quoting Black's Law Dictionary 671 (10th ed. 1999)). To establish misrepresentation, the appellant must show that a reasonable person would have been misled by the misinformation. *Armstrong v. Department of the Treasury*, 110 M.S.P.R. 533, ¶ 12 (2009), *aff'd in part, vacated in part*, 591 F.3d 1358 (Fed. Cir. 2010).

¶20     Here, even if the appellant's late husband intentionally misled her regarding the effect of his election and her consent thereto, we cannot find that a reasonable person would have been misled by the misinformation as to render her consent invalid on the basis of fraud. The SF 2801-2, which the appellant signed before a notary public on September 16, 2011, and October 7, 2011, is clear on its face and sufficiently informed her of the effect of consenting to her late husband's election to provide her a partial annuity in the amount of 55 percent of $22 per year.[6] IAF, Tab 3, Exhibit 2 at 5, Tab 6 at 48; *see Braza*, 598 F.3d at 1319-20 (holding that a prior version of SF 2801-2 "provides sufficient notice to alert readers to its consequences upon reasonable review and is explicit enough for the act of signing the form to evidence agreement with the terms of the form"). Although the appellant was shown a printout reflecting that she would receive a

---

[6] Specifically, the SF 2801-2 states in the instructions section that "[i]f you are married and you do not elect a reduced annuity to provide a maximum survivor annuity for your current spouse, complete Part 1." IAF, Tab 6 at 48. The appellant's late husband filled out Part 1, electing the third option—"[a] partial survivor annuity for my current spouse equal to 55% of $22.00 a year." *Id.* Part 2 of the form indicates that it is to be completed by the current spouse of the retiring employee and provides as follows: "I freely consent to the survivor annuity election described in Part 1 . . . I also understand that my consent is final (not revocable)." *Id.* Part 3 was completed by a notary public who certified that the appellant presented identification, signed the form, and acknowledged that her consent was freely given. *Id.* The general information section of the form further provides that "[t]he law requires that a retiring, married employee must elect to provide a survivor annuity for a current spouse *unless* the current spouse consents to some other election by signing this form." *Id.* (emphasis in original).

surviving spouse gross monthly annuity of $2,647, the printout—labeled "annuity estimate as of pay period 18 of 2011"—clearly indicates it is an estimate. IAF, Tab 1 at 11. Therefore, we find that the appellant has not shown that her consent to her husband's election was invalid on the basis of fraud in the inducement.

<u>The appellant has not established any other basis to find that her consent to her late husband's election of a partial survivor annuity was invalid.</u>

¶21 The appellant also argues on review that the SF 2801-2 was confusing and failed to meet the notice and consent requirements of the Spouse Equity Act. PFR File, Tab 1 at 22-26. Although she alleged below that she did not understand the effect of giving her consent to her late husband's election and that it was not sufficiently explained to her, she did not challenge the language of the form itself. IAF, Tabs 1, 3, 8. Therefore, we need not consider this argument raised for the first time on review. *See Cerilli*, [119 M.S.P.R. 404](#), ¶ 11; *Banks*, 4 M.S.P.R. at 271. Nonetheless, as discussed above, we find that the SF 2801-2 sufficiently placed the appellant on notice of the consequence of giving her consent to her husband's election of a partial survivor annuity in the amount of 55 percent of $22 per year. IAF, Tab 6 at 48; *see Braza*, 598 F.3d at 1319-20. Moreover, we find no merit to her argument that the SF 2801-2 falls short of any notice and consent requirements contained in the Civil Service Retirement Spouse Equity Act of 1984, Pub. L. No. 98-615 § 2, 98 Stat. 3195. That the appellant signed the SF 2801-2 without reading it or without understanding it, instead relying on her late husband's assurances, "does not release her from the binding effect of the waiver under controlling law" and does not invalidate her waiver of her entitlement to a full survivor annuity. *See Braza*, 598 F.3d at 1321.

¶22 The appellant further argues that her late husband's severe health issues and the likelihood that his death "would occur relatively quickly" demonstrate "the absolute absurdity of a knowing consent to a survivor annuity of $1.00 per month." PFR File, Tab 1 at 21. Although we sympathize with the appellant's situation, neither the Board, nor OPM, may grant retirement benefits on the basis

of equitable considerations when granting such benefits is not otherwise permitted by law. *See Office of Personnel Management v. Richmond*, 496 U.S. 414, 416 (1990); *Hamilton v. Office of Personnel Management*, 69 M.S.P.R. 690, 694 (1996). Therefore, we find no basis to disturb the administrative judge's determination that OPM's reconsideration decision must be affirmed.

## NOTICE OF APPEAL RIGHTS[7]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court

---

[7] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2)** **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before

you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

(3) **Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[8]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

---

[8] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD: 

/s/ for

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.